Ted R. PAHLE and Lynn Ann
Pahle h/w, Plaintiffs,

v.

COLEBROOKDALE TOWNSHIP, Larry Mauger, Colebrookdale Township Police Department, Douglas/Berks Township, Tod Heckman, Douglas/Berks Township Police Department, Katherine M. Fryer And Dana Dotterer, Defendants.

United States District Court,
E.D. Pennsylvania.

March 26, 2002.

William J. Fox, Philadelphia, PA, for Plaintiffs.

Bernard E. Jude Quinn, German, Gallagher & Murtagh, Philadelphia, PA, Daniel J. Divis, Philadelphia, PA, for Defendants.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

Plaintiffs Ted and Lynn Pahle assert claims under § 1983[1] and state tort claims against several law enforcement officials and departments along with their associated municipalities, arising from Mr. Pahle's drunk driving arrest on June 28, 1998. We now find that a dispute of material fact exists as to whether Officer Katherine Fryer had probable cause for her detention and arrest of Mr. Pahle. A trier of fact must also determine whether she used excessive force in this arrest. Plaintiff's state law assault and battery and false imprisonment claims survive for the same reasons. Moreover, in an unsettled area of Pennsylvania law, after analyzing the seemingly conflicting precedents, we believe that the Pennsylvania Supreme Court would allow Lynn Pahle's derivative, state loss of consortium claim against Officer Fryer to survive. If Mrs. Pahle shows that her husband was emotionally or physically injured by Officer Fryer's alleged unlawful conduct, such that she suffered damaged marital expectations, then she should be able to recover damages under Pennsylvania law for loss of consortium. We also believe that in the Third Circuit, Mrs. Pahle could have alleged that Defendants incurred § 1983 liability by interfering directly with her constitutional rights

---

1. In addition to their 42 USCA § 1983 claims, Plaintiffs also assert claims under 42 USCA § 1988. The Civil Rights Attorney's Fees Award Act of 1976 (42 U.S.C.A. § 1988) provides that the trial court in its discretion may award reasonable attorney fees to parties prevailing in a § 1983 action. Because Plaintiffs' § 1988 claims only become relevant if Plaintiffs succeed in litigation, we need not consider them now, upon summary judgment. See Vasquez v. Fleming, 617 F.2d 334, 336 (3rd Cir.1980).

to marital integrity and spousal association. However, Mrs. Pahle did not adequately plead such a Due Process violation, and waived any federal claims. We will grant summary judgment as to all of Mr. Pahle's remaining state and federal claims.[2]

## I. BACKGROUND

Though the parties allege vastly different factual accounts, our responsibility is to consider whether Plaintiffs' version of the events, viewed in its most favorable light, is sufficient to overcome summary judgment. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.1985), cert. denied, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985). Plaintiffs' account is as follows:

Mr. Pahle suffered brain damage and a host of other serious injuries in a devastating fall down the stairs of his home in 1994. He spent years trying to regain functionality, and still has great difficulty with memory, other mental functions and many physical activities. His recovery has been impeded by bouts with alcoholism.

In June 1998, Mr. Pahle was not drinking and was just starting to reintegrate into society and resume working (he owned a welding business prior to his catastrophic injuries). Then early in the morning of June 28, 1998, Mr. Pahle was pulled over by Colebrookdale Township Police Officer Katherine Fryer on his way home from a local diner (hereafter, "the incident"). Though Mr. Pahle was driving normally, Officer Fryer stopped Mr. Pahle on a tip from two off-duty police officers. They contacted her after they saw Mr. Pahle in the diner parking lot and believed he was drunk and unfit to drive.

Mr. Pahle moved immediately to the side of the road upon being signaled to do so by Officer Fryer. She approached his vehicle and asked him for his driver's license and registration. Mr. Pahle was very nervous and began fumbling with his wallet to find disability identity cards, attempting to explain to Officer Fryer that his communication capacity was impaired by his brain injury. Officer Fryer grew impatient with Mr. Pahle's failure to produce the requested documents, and asked that he step out of his vehicle to undergo several sobriety tests. Mr. Pahle refused to take the tests, on account of his disabilities, but said he would consent to a blood test.

Thereupon, Officer Fryer asked Mr. Pahle to lie over the trunk of his vehicle and began to arrest Mr. Pahle, pulling his arms behind his back to place him in handcuffs. Because of Mr. Pahle's injuries, he experienced excruciating pain when Officer Fryer forced his right arm behind him, and he reflexively spun away from her and into the roadway. Officer Fryer perceived Mr. Pahle's action as an attempt to resist arrest, and she forced him to the ground and placed him in handcuffs. In the process, Mr. Pahle re-injured the shoulder and arm he had been rehabilitating, along with his face and head, which struck the pavement. While Mr. Pahle was on the ground, Officer Fryer kicked him several times.

Prior to the incident, Officer Fryer received training in handling individuals with disabilities, but none regarding brain-damaged individuals. Colebrookdale Township and the Colebrookdale Township Police Chief, Larry Mauger, did not learn Plaintiffs' version of the incident until this lawsuit was filed.

---

**2.** We will approve Plaintiff's Praecipe to Dismiss Certain Defendants, filed February 25, 2002, in which Mr. Pahle withdraws his claims against Douglas/Berks Township, Douglas/Berks Police Department, Tod Heckman and Dana Dotterer. As such, we will address no further discussion to the merits of Plaintiff's former claims against these parties.

After the incident, Mrs. Pahle states that Mr. Pahle became paranoid, keeping the shades drawn and the doors secured at home with extra boards. He became anti-social, in that he stopped bathing, would not leave the house unaccompanied, became upset very easily and even turned suicidal. Moreover, he stopped performing household chores he had been doing, such as maintaining the lawn, and discontinued his efforts to resume working. Mrs. Pahle was required to be Mr. Pahle's keeper, nursemaid and cook. Though he had never done so previously, Mr. Pahle threatened to strike his wife by raising his hand toward her. Eventually, Mrs. Pahle believed her husband's mental state had deteriorated so much since the incident that she felt he was a danger to himself and others and that she could not safely return to her own home until she had him committed to a mental institution. Subsequently, the Pahles were divorced, though they had never been separated before the incident, and their house was repossessed.

At a limited oral argument on March 20, 2002, the parties agreed that Mr. Pahle accepted an Accelerated Rehabilitative Disposition (ARD) regarding the criminal charges filed against him [3] before he was tried on those charges. Thereafter, Defendants submitted the ARD hearing transcript, showing that Mr. Pahle accepted ARD without pleading guilty or otherwise admitting to any of the offenses.

## II. DISCUSSION

### A. Summary Judgment

The court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id.* at 248, 106 S.Ct. 2505. All inferences must be drawn, and all doubts resolved, in favor of the non-moving party—in this case, Plaintiff. *Diebold,* 369 U.S. at 655, 82 S.Ct. 993; *Gans,* 762 F.2d at 341. On a motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the movant and may not rest on mere denials. *Id.* at 322 n. 3, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)); *see First Nat'l Bank of Pennsylvania v. Lincoln Nat'l Life Ins. Co.,* 824 F.2d 277, 282 (3d Cir.1987). The non-moving party must demonstrate the existence of evidence that would support a jury finding in its favor. *See Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505.

### B. Jurisdiction, Applicable Law

We have original, subject matter jurisdiction over § 1983 claims under 28 USC § 1331. We consider Plaintiffs' state law claims by exercising our supplemental jurisdiction under 28 USC § 1367(a), inas-

---

**3.** Mr. Pahle was charged with violations of 75 Pa.C.S.A. 3731.0(a)(1) (driving under influence), 75 Pa.C.S.A. 3334.0(a) (signals), 75 Pa. C.S.A. 3301.0(a) (right side of roadway) and 18 Pa.C.S.A. 5104.0 (resisting arrest), which were merged when he agreed on March 17, 1999 to an Accelerated Rehabilitative Disposition (ARD). He accepted 12 months county probation, a 140–day license suspension, and payment of associated costs and fines.

much as these claims arise from the same actions by Defendants that allegedly violated § 1983. On such state law questions, we apply the rules established by the Pennsylvania Supreme Court. *See Commissioner of Internal Revenue v. Bosch's,* 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967).

■ Lower state court decisions are persuasive, but not binding, on the federal court's authority. If the State's highest court has not spoken on a particular issue, the "federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State." *Smith v. Whitmore,* 270 F.2d 741, 745 (3rd Cir.1959); *see also Polselli v. Nationwide Mut. Fire Ins.,* 126 F.3d 524, 528 (3rd Cir.1997); *Scranton Dunlop, Inc. v. St. Paul Fire & Marine Ins. Co.,* 2000 WL 1100779, *1 (E.D.Pa. 2000) ("Since this is a matter of state law that has not been decided by the Pennsylvania Supreme Court, a prediction must be made as to how that court would rule if confronted with the same facts.").

C. Section 1983 Generally

■ To state a claim for civil damages under § 1983, a plaintiff must show that the defendant, through conduct sanctioned under the color of state law, deprived her of a federal constitutional or statutory right. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.E.2d 420 (1986); *Gruenke v. Seip,* 225 F.3d 290, 298 (3rd Cir.2000). Section 1983 does not create any new substantive rights, but instead provides a remedy for the violation of a federal constitutional or statutory right. *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Gruenke,* 225 F.3d at 298.

Plaintiffs' Complaint alleges a wide range of constitutional claims, including violations of the First, Fourth, Eighth and Fourteenth Amendments. Specifically, Plaintiffs contend that Officer Fryer breached Mr. Pahle's constitutional rights by stopping, detaining, arresting and transporting him without reasonable suspicion or probable cause and by using excessive force in effectuating his arrest. Colebrookdale Township ("the Township"), the Colebrookdale Township Police Department ("the police department") and Chief Larry Mauger allegedly infringed upon Plaintiffs' constitutional rights through their poor training on arrest tactics and interaction with disabled individuals and their deliberate indifference to the use of excessive force in incidents like the one involving Mr. Pahle.

D. Federal Claims Against Colebrookdale Township Police Department

■ In § 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police departments are merely administrative agencies of the municipalities—not separate judicial entities. *See, e.g., Dean v. Barber,* 951 F.2d 1210, 1215 (11th Cir.1992); *Rhodes v. McDannel,* 945 F.2d 117, 120 (6th Cir. 1991), cert. denied, 502 U.S. 1032, 112 S.Ct. 872, 116 L.Ed.2d 777 (1992); *Open Inns, Ltd. v. Chester County Sheriff's Dept.,* 24 F.Supp.2d 410, 417 (E.D.Pa. 1998); *Irvin v. Borough of Darby,* 937 F.Supp. 446, 451 (E.D.Pa.1996); *Regalbuto v. City of Philadelphia,* 937 F.Supp. 374, 377 (E.D.Pa.1995). Because the police department is merely an arm of the Township, and thus a redundant party, we will grant summary judgment to the police department on all federal claims.

E. State Claims Against Colebrookdale Township and Colebrookdale Township Police Department

■ Both the police department and the Township are political subdivisions and local agencies. As to Plaintiffs' state law claims against the police department and the Township, the Pennsylvania Political

Subdivision Tort Claims Act (PSTCA), 42 Pa. Cons.Stat. §§ 8541–64, grants governmental immunity to political subdivisions against claims for damages on account of any injury to a person or to property except for negligent acts falling within one of eight categories: (1) vehicle liability, (2) care, custody or control of personal property, (3) real property, (4) trees, traffic controls and street lighting, (5) utility service facilities, (6) streets, (7) sidewalks, and (8) care, custody or control of animals. 42 Pa. Cons.Stat. § 8542(b). Plaintiffs do not allege negligence within any of § 8542's enumerated categories, and thus cannot allege common law negligence by the police department or the Township.

Under the PSTCA, local agencies are not liable for injuries caused by their own acts or the acts of their employees that constitute "crime[s], actual fraud, malice or willful misconduct." 42 Pa. Cons.Stat. § 8542(a). Intentional torts are "willful misconduct" under § 8542(a).Therefore, the PSTCA bars all of Plaintiffs' remaining state law claims against the Township and the police department. We will grant summary judgment as to all state law claims against these entities.[4]

### F. Federal Claims Against Colebrookdale Township

■ Showing that Mr. Pahle was mistreated by Officer Fryer during the incident would be insufficient, in and of itself, to establish the Township's liability. Municipalities cannot be liable under § 1983 based on the theory of respondeat superior.[5] *Monell v. Department of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Moreover, proving one incident of misconduct, however severe, cannot in and of itself engender municipal liability. *Oklahoma City v. Tuttle,* 471 U.S. 808, 823–824, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). The Township may only be held liable under § 1983 if Plaintiffs provide evidence indicating that it had a general policy or custom which allowed the use of excessive force or other constitutional violations in detaining, taking into custody and arresting suspects. *Id.*

■ Plaintiffs contend that Defendants deliberately or negligently failed to train their officers as to the proper use of force and the proper way to engage disabled individuals. But the bare assertion that the city failed to provide training does not establish that the entity failed to train officers or acted with deliberate indifference. Recall that Plaintiffs must demonstrate evidence that would support a jury finding in their favor, and may not rest on their pleadings. *See Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505.

---

**4.** A state law judgment against Chief Mauger or Officer Fryer in their official capacities would impose tort liability on the Township. *See Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Busby v. City of Orlando,* 931 F.2d 764 (11th Cir. 1991); *Ruiz v. Philadelphia Hous. Auth.,* No. CIV.A. 96–7853, 1998 WL 159038, at *6 (E.D.Pa. March 17, 1998); *Agresta v. City of Philadelphia,* 694 F.Supp. 117, 119 (E.D.Pa. 1988); *Baldi v. City of Philadelphia,* 609 F.Supp. 162, 168 (E.D.Pa.1985). Because we have found that state tort liability against the Township is prohibited under the PSTCA, we will grant summary judgment in favor of Defendants Mauger and Fryer as to all state law claims brought against them in their official capacities.

**5.** Though we will deny summary judgment for the reasons explained below as to several claims against Officer Fryer in her individual capacity, we must grant summary judgment on all claims against her in her official capacity, under *Monell,* because we find that Plaintiffs have presented no evidence implicating the Township in the incident in question or showing that the Township otherwise sanctioned the sort of conduct allegedly committed by Officer Fryer.

Here, the only relevant evidence of record suggests that Officer Fryer and others received consistent training on proper arrest procedures, and specifically received instruction as to how to cope with people with physical and mental impairments. *See* Lawrence J. Mauger Deposition, pp. 60–69; Katherine M. Fryer Deposition, pp. 7–17, 76–78. In addition to more generalized training, Officer Fryer, Chief Mauger and others attended a seminar at Norristown State Hospital on dealing with mentally ill individuals. *Id.*, Mauger at p. 67, Fryer at p. 77.

Though the Township had no written policy concerning arrests of disabled suspects, an explicit policy prohibited excessive force. The policy, "Use of Force (8–28–96)," limits "the use of force to those situations of absolute necessity. All officers will only use the amount of force reasonable and necessary on any particular occasion." Defendant's Summary Judgment Motion, Exhibit I.

While it is conceivable that such training and policies could be widely ignored, Plaintiffs have offered no evidence that Township officials did so. Plaintiffs' only allegations concern the single incident with Mr. Pahle. Plaintiffs failed to show a pattern of excessive force violations or inadequate training sufficient to establish municipal liability. We will grant summary judgment as to all claims against the Township.

G. Federal and State Claims Against Chief Mauger in his Individual Capacity

█ As with municipal liability, supervisory liability under § 1983 cannot be based solely upon the doctrine of respondeat superior—Plaintiffs must affirmatively show conduct by the Township's Police Chief Mauger that played a role in the constitutional violations. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir.

1990), citing *Rizzo v. Goode*, 423 U.S. 362, 377, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). The Third Circuit explains, "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence ... must be made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988). Plaintiffs must show at the very least that Chief Mauger acted with deliberate indifference to the alleged constitutional violations. *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

█ Here, Plaintiffs have neither alleged nor offered evidence that Chief Mauger personally directed Officer Fryer to apprehend Mr. Pahle or to use force. Nor have Plaintiffs provided evidence suggesting that Chief Mauger knew of the alleged wrongdoing and acquiesced. The Plaintiffs do not show that Chief Mauger acted with deliberate indifference. On the contrary, Chief Mauger testified without rebuttal that he did not learn of the incident involving Mr. Pahle until after Plaintiffs filed suit. Furthermore, upon learning of the incident, he immediately investigated the matter with Officer Fryer, though he eventually concluded that her conduct was justified. Plaintiffs' federal claims against Chief Mauger must fail. These findings likewise negate Plaintiffs' state claims against him.

Accordingly, we will also grant summary judgment as to all claims against Chief Mauger.

H. Ted R. Pahle's Federal Claims Against Officer Fryer in Her Individual Capacity

1. Reasonable Suspicion for the Investigative Stop

Based on the foregoing discussion, the only remaining Defendant is Officer Fryer

in her individual capacity. Plaintiffs argue that Officer Fryer lacked probable cause to arrest Mr. Pahle under the Fourth Amendment. Before we address whether Officer Fryer's arrest was proper, we must determine whether she was justified in stopping Mr. Pahle.

■ To make an investigative stop, like that made by Officer Fryer, a law enforcement official must have an articulable, reasonable suspicion that the driver in question is violating the law. *Brown v. Texas*, 443 U.S. 47, 51, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *Karnes v. Skrutski*, 62 F.3d 485, 491–492 (3rd Cir.1995). We now find that Officer Fryer had a reasonable suspicion warranting an investigative stop of Mr. Pahle's vehicle, even if we assume, as Plaintiffs allege, that Mr. Pahle was driving lawfully.

Plaintiffs do not deny that Officer Fryer began following Mr. Pahle after receiving information from two off-duty police officers, who stated that they had seen Mr. Pahle intoxicated. Rather, Plaintiffs contend that these informants had themselves been drinking and were therefore unsuited to establish grounds for Officer Fryer's traffic stop of Mr. Pahle.

Even if, as Plaintiffs contend, the off-duty officers were mistaken in their assessment of Mr. Pahle's condition, we believe Officer Fryer was justified in relying on these officers as informants, since such officers regularly watch drivers for warning signs of intoxication. In other words, whether or not the off-duty officers' perception of Mr. Pahle was correct is irrelevant. *See Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3rd Cir.1988). Plaintiffs do not dispute that the off-duty officers believed, rightly or wrongly, that Mr. Pahle was unfit to drive, and that this judgment precipitated Officer Fryer's stop of Mr. Pahle's car. The officers correctly identified Mr. Pahle's vehicle, which Officer Fryer stopped a short time later at or near the area where they said he would be driving.

■ We believe Plaintiffs are incorrect that Officer Fryer should have interviewed the off-duty officers/informants extensively to determine the strength of their identification or their state of mind at that moment. As the Supreme Court has explained, "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Graham v. Connor*, 490 U.S. 386, 396–397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Officer Fryer may have missed the opportunity to stop a potentially dangerous driver if she had spent too long interviewing the off-duty officers, who were superficially reliable informants by virtue of their regular jobs as police officers. Holding that a brief stop to further ascertain probable cause may be appropriate under certain circumstances, the Supreme Court explained, "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Adams v. Williams*, 407 U.S. 143, 145–46, 92 S.Ct. 1921, 1922–23, 32 L.Ed.2d 612 (1972); *see also Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Once Officer Fryer harbored a reasonable suspicion, provided by the off-duty officers' identification, she was entitled to stop Plaintiff briefly to obtain more information as to his fitness for driving. *Id.*

2. Probable Cause for Arrest

■ Though Officer Fryer's reasonable suspicion authorized her to stop Mr. Pahle's car for initial investigation, she needed probable cause to detain him long

enough to subject him to field sobriety tests and arrest him. When Officer Fryer detained and subsequently transported Mr. Pahle so that either his blood or breath could be tested for alcohol, she implicated the Fourth Amendment's requirement of probable cause for a search and seizure.[6] *See, e.g., Schmerber v. California,* 384 U.S. 757, 772, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *Commonwealth v. Murray,* 441 Pa. 22, 271 A.2d 500 (1970); *Commonwealth v. Quarles,* 229 Pa.Super. 363, 376–377 n. 4, 324 A.2d 452 (1974).

The off-duty officers' statements, while sufficient to create a reasonable suspicion justifying an investigative stop, were insufficient standing alone to establish probable cause. The Third Circuit has held, "[S]tatements by fellow officers conveying that there is probable cause for a person's arrest, by themselves, cannot provide the 'facts and circumstances' necessary to support a finding of probable cause." *Rogers v. Powell,* 120 F.3d 446, 453 (3rd Cir.1997). As the court explained, "Probable cause exists only if the statements made by fellow officers are supported by actual facts that satisfy the probable cause standard." *Id.*

In the instant case, accepting Mr. Pahle's version, the off-duty officers who notified Officer Fryer that Mr. Pahle was driving drunk at best observed him in the darkness from a distance. Their report may have given rise to a suspicion that Mr. Pahle was drunk. However, without their having detected alcohol upon him through close contact, or having observed him drinking or otherwise tested his sobriety, these off-duty officers did not have sufficient information to establish probable cause themselves for Mr. Pahle's detention and arrest.

Officer Fryer was required to establish probable cause through her own brief in-

**6.** Officer Fryer may argue that Mr. Pahle consented to the blood test, thereby obviating the need to apply the Fourth Amendment standards. A Pennsylvania court explained, "As a general rule the Fourth Amendment requires as a prerequisite to a search and seizure the issuance of a search warrant by a magistrate who has made an independent judgment as to probable cause. The requirement of a warrant is dispensed with where a search and seizure are conducted pursuant to valid consent [among other reasons].... It is possible that a driver may actually consent to a seizure of his person and the administration of a test of his breath or blood. Actual consent may then provide a constitutional basis for the seizure and test. Such consent must appear from 'all the surrounding circumstances' to have been voluntary, i.e. not 'coerced, by explicit to implicit means [sic], by implied threat or covert force.'" *Quarles,* 229 Pa.Super. at 377–378, 324 A.2d 452, citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 228, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

Though Mr. Pahle did not consent to Officer Fryer's field sobriety tests, he did consent to a blood test. However, he alleges that he gave this consent after Officer Fryer was screaming at him, making statements that she did "not have time for this garbage." Ted Pahle Deposition at p. 98. He testified that she said, "If you don't ... you know, plead guilty—in other words, tell her I've been drinking, she says, I'm going to make it really hard on you." *Id.* If Mr. Pahle's representation is true, as we must assume at summary judgment, then his consent to the blood test was not voluntary, because no reasonable person would have felt he had the ability to refuse testing when threatened by a police officer in this manner. A person in Mr. Pahle's fragile mental state may have been even more susceptible to this form of coercion. *Schneckloth,* 412 U.S. at 229, 93 S.Ct. 2041 ("In examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents.").

Thus, at summary judgment, Mr. Pahle's supposed consent does not supersede the need for Officer Fryer to establish that she had probable cause for her search and seizure.

vestigative stop. She stated that Plaintiff was driving erratically, that he smelled of alcohol and made drunken, threatening statements to her which supplied probable cause for his detention. His refusal to submit to field sobriety testing supplied probable cause for his arrest and transportation to the blood testing site, she alleges. However, Officer Fryer's version is not at issue.

Mr. Pahle states that he was driving normally, had not been drinking, and that in fact, Officer Fryer, not he, made the threatening statements. Thus, adopting Mr. Pahle's story, as we must at this juncture, we cannot say that Officer Fryer's detention and arrest were reasonably, properly conducted based on probable cause.

The trier of fact must decide which version to believe—Officer Fryer's or Mr. Pahle's—in order to ascertain which facts and circumstances could have been within Officer Fryer's knowledge at the time she detained and arrested Mr. Pahle. *See Rogers,* 120 F.3d at 453 ("Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." [Citations omitted.]) If the facts were as Officer Fryer states, then she had probable cause, as a matter of law, for the arrest. If, on the other hand, the situation existed as Mr. Pahle describes it, then Officer Fryer most likely lacked probable cause to detain and arrest him. For example, if a jury believes that Mr. Pahle was not drinking, as he states, then Officer Fryer probably could not have smelled alcohol on his breath, which she used to justify her detention of him.

We note that if Mr. Pahle had admitted to driving drunk when he agreed to an Accelerated Rehabilitative Disposition (ARD) regarding the criminal charges filed against him, then we would have found probable cause for the arrest and dismissed this component of his § 1983 charges and any connected state law claims. *See* Comment to 42 Pa.C.S.A., Rule 313 ("Whether a defendant's statement [in ARD proceedings] may be used in a noncriminal proceeding is a matter of substantive law."). However, in this case, because Mr. Pahle neither admitted nor was convicted of drunk driving in his ARD proceedings (i.e., this issue was never fully and fairly litigated), collateral estoppel does not preclude Mr. Pahle's assertion that Officer Fryer detained, arrested and transported him without probable cause. *See Max v. City of Philadelphia,* 102 F.Supp.2d 609, 611 (E.D.Pa.2000) ("While collateral estoppel could preclude both state law and section 1983 claims, the court does not have a record from which it can assess the collateral estoppel effect of the plaintiff's entry into the ARD program."); *Commonwealth v. Baranyai,* 278 Pa.Super. 83, 419 A.2d 1368 (1980) (Appellant police officer "argues that his convictions for assaulting and oppressing Dave Stier [the original criminal defendant, subsequent civil plaintiff] are inconsistent with and barred on principles of collateral estoppel by Stier's conviction for driving while under the influence of intoxicating liquor and resisting arrest.... We agree with the [lower court observations] that Stier's acceptance in the Accelerated Rehabilitative Disposition Program did not constitute an adjudication of guilt. Moreover, the Commonwealth and not appellant was the other party in that criminal action. Consequently, the disposition of the charges against Stier did not constitute a bar to appellant's present convictions.").

3. Excessive Force

The parties do not dispute that Officer Fryer arrested Plaintiff after he

refused to perform the field sobriety tests. An officer may exercise a reasonable degree of physical force under the circumstances to effectuate an arrest. *Graham,* 490 U.S. at 386, 109 S.Ct. 1865. What is "reasonable" is measured based upon several factors: 1) the severity of the crime; 2) the immediate threat the suspect poses to the officers' safety; and 3) whether the subject is actively resisting arrest. *Tennessee v. Garner,* 471 U.S. 1, 8–9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

■ At worst, Mr. Pahle was driving drunk before he was stopped. Mr. Pahle testified that he was attempting to cooperate by stepping out of the car and not resisting arrest in any way. He says he pulled his arm away from Officer Fryer because of the insupportable pain he was suffering as she aggravated his prior injuries. For the purposes of this motion, we are required to accept Mr. Pahle's rendition, though Defendants' account is very different. Under the circumstances as Mr. Pahle portrays them, Officer Fryer's action tossing him to the ground, causing head, facial and other injuries, may have been excessive. Though Officer Fryer denies it, we assume that she also kicked Mr. Pahle several times while he was on the ground, as Mr. Pahle stated in his deposition. This conduct, if Plaintiffs establish it at trial, would almost certainly constitute excessive force under the circumstances as Mr. Pahle painted them.

We cannot grant summary judgment as to Mr. Pahle's excessive force claim against Officer Fryer in her individual capacity because of the disputed facts on this question.

4. Officer Fryer's Qualified Immunity Defense to Ted R. Pahle's Federal Claims

■ Officer Fryer raised the affirmative defense of qualified immunity, which would absolve her of Plaintiffs' claims if reasonable officers could have believed their conduct was lawful "in light of clearly established law and the information" that she possessed at the time of the incident. *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Karnes,* 62 F.3d at 491. Officer Fryer bears the burden of establishing this affirmative defense. *Karnes, id.* The Third Circuit has explained that "[w]hile the qualified immunity defense is frequently determined by courts as a matter of law, a jury should decide disputed factual issues relevant to that determination." *Id.; see also generally Sharrar v. Felsing,* 128 F.3d 810, 827 (3rd Cir.1997).

Because we have found that Officer Fryer had a reasonable suspicion for her initial investigative stop, we need not consider her qualified immunity as to that issue. However, we have found that factual issues exist making summary judgment inappropriate as to Officer Fryer's determination of probable cause for Mr. Pahle's detention, arrest and transportation, and as to Officer Fryer's alleged use of excessive force in arresting him. These questions requiring a trier of fact's attention also prevent summary judgment entitling Officer Fryer to qualified immunity.

Officer Fryer's conduct was not reasonable or according to settled constitutional standards if, as Mr. Pahle testified, she detained, arrested and transported him though he was not drinking, driving erratically or acting belligerently. Taking Mr. Pahle's testimony as true, that he was not threatening Officer Fryer or resisting arrest, her conduct was unreasonable by established standards if she pushed him to the ground and kicked him repeatedly.

Thus, we will deny summary judgment for Officer Fryer based on the affirmative defense of qualified immunity.

## I. State Claims Against Officer Fryer in Her Individual Capacity

### 1. Ted R. Pahle's Claims of Assault and Battery

 In Pennsylvania, "[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk v. City of Pittsburgh*, 537 Pa. 68, 76, 641 A.2d 289 (1994). The Pennsylvania Supreme Court explained in a case alleging assault and battery by a police officer,

> A police officer may use reasonable force to prevent interference with the exercise of his authority or the performance of his duty. In making a lawful arrest, a police officer may use such force as is necessary under the circumstances to effectuate the arrest. The reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery. *Id.;* 18 Pa. Cons. Stat. § 508.

Here, because, as we discussed, issues of fact remain as to whether Officer Fryer's arrest was lawful, and whether she used reasonable or excessive force, we may not grant summary judgment as to Mr. Pahle's state assault and battery claims.

### 2. Ted R. Pahle's Claim of False Imprisonment

 The elements of false imprisonment in Pennsylvania are (1) the detention of another person, and (2) the unlawfulness of such detention. *Fagan v. Pittsburgh Terminal Coal Corporation*, 299 Pa. 109, 149 A. 159 (1930). The Pennsylvania Supreme Court explained, "An arrest based upon probable cause would be justified, regardless of whether the individual arrested was guilty or not. . . . A police officer may be held liable for . . . false imprisonment when a jury concludes that he did not have probable cause to make an arrest." *Renk*, 537 Pa. at 76, 641 A.2d 289. Because we cannot yet determine whether Officer Fryer's arrest was properly based upon probable cause, we may not grant summary judgment as to Mr. Pahle's false imprisonment claim.

### 3. Ted R. Pahle's Claims of Malicious Prosecution,[7] Abuse of Process, Intentional and Negligent Infliction of Emotional Distress, Setting Unreasonable Bond

Plaintiffs do not dispute Defendants' summary judgment motion with respect to these claims. Accordingly, we will dismiss them.

### 4. Lynn Ann Pahle's Derivative Loss of Consortium Claim [8]

 In Pennsylvania, a loss of consortium means a loss of the company, soci-

---

7. We note that Mr. Pahle was not acquitted of the drunk driving offense, but agreed to Accelerated Rehabilitative Disposition (ARD), a court-supervised compromise. It is well-established that an ARD agreement is not a sufficiently favorable termination of the proceedings against Mr. Pahle to uphold his malicious prosecution claim. *See Davis v. Chubb/Pac. Indem. Group*, 493 F.Supp. 89 (E.D.Pa.1980); *Kelley v. General Teamsters*, 518 Pa. 517, 544 A.2d 940 (1988). Even if Plaintiffs did dispute summary judgment with respect to this claim, they could not prevail.

8. In Plaintiffs' original Complaint, Mrs. Pahle is a named Plaintiff and is mentioned as a citizen and resident of Gilbertsville, Pennsylvania and the United States of America. Complaint at 3. Otherwise, Mrs. Pahle is not mentioned in the Complaint. In the poorly-pled sections listing Defendants' alleged state and federal violations, the Complaint states, "Defendants deprived Plaintiff of *his* rights to

ety, cooperation, affection and aid of a spouse in every conjugal relation. *Cleveland v. Johns–Manville Corp.*, 547 Pa. 402, 408, 690 A.2d 1146 (1997); *Hopkins v. Blanco*, 224 Pa.Super. 116, 302 A.2d 855 (1973), aff'd. 457 Pa. 90, 320 A.2d 139 (1974); *Bedillion v. Frazee*, 408 Pa. 281, 284–285, 288, 183 A.2d 341 (1962); *Kelley v. Township of Mayberry*, 154 Pa. 440, 26 A. 595 (1893); *Fanelle v. Lojack Corp.*, 2000 WL 1801270, *13 (E.D.Pa.2000). It includes not only material services, but intangibles such as society, guidance, companionship and sexual relations. *Id.* A wife who suffers a loss of consortium does not herself sustain physical injury, but rather, damaged marital expectations as a result of the injuries to her husband. *Id.; Darr Constr. Co. v. Workmen's Compensation Appeal Bd.*, 552 Pa. 400, 406, 715 A.2d 1075 (1998); *Sprague v. Kaplan*, 392 Pa.Super. 257, 572 A.2d 789 (1990). Her case is derivative, i.e. dependant on the success of the underlying claim asserted by her injured husband. *Kryeski v. Schott Glass Technologies, Inc.*, 426 Pa.Super. 105, 119, 626 A.2d 595 (1993); *McNeal v. City of Easton*, 143 Pa.Cmwlth. 151, 160, 598 A.2d 638 (1991); *Schroeder v. Ear, Nose & Throat Assoc.*, 383 Pa.Super. 440, 443, 557 A.2d 21 (1989); *Tiernan v. Devoe*, 923 F.2d 1024, 1036 (3rd Cir.1991); *Fanelle*, 2000 WL 1801270, *13.

Because Mr. Pahle's underlying claims concerning probable cause, excessive force, assault and battery and false imprisonment will overcome summary judgment, Mrs. Pahle's loss of consortium claim stemming from his injuries may also survive. Her testimony and Mr. Pahle's suggest that he was attempting to resume working before the incident, but was completely dependent on her afterwards. He also stopped doing household chores, like mowing the lawn. He stopped bathing and became antisocial. After the incident, Mr. Pahle became temperamental, even violent toward Mrs. Pahle, and contemplated suicide. In the end, she had him committed to a mental institution and they divorced and lost their home. Mrs. Pahle

freedom of speech," etc. (emphasis supplied), listing the constitutional rights (Complaint at 33) and "Defendants acts [sic] are a pattern [sic] and practice to deprive Plaintiff of *his* rights to be free from ... loss of consortium," etc. (emphasis supplied), listing the state rights. Complaint at 34. In other words, the Complaint never specifically mentions Mrs. Pahle's claims.

When adjudicating state claims through an exercise of our supplemental jurisdiction, we apply state substantive law and federal rules of procedure. *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 1145, 14 L.Ed.2d 8 (1965); *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1223 (3rd Cir.1995). The federal rules merely require notice pleading. Fed.R.Civ.P. 8(a); *see also*, e.g., *Russoli v. Salisbury Tp.*, 126 F.Supp.2d 821 (E.D.Pa.,2000) (Van Antwerpen, J.) ("The Federal Rules require only notice pleading, i.e. a short plain statement of the facts giving rise to claims for relief. The Rules do not require Plaintiffs to lay out various counts, or specify whether they arise under federal or state law. Here, the Plaintiffs have accepted the invitation of the Federal Rules of Civil Procedure to rely on notice pleading, and we will not hold their manner of pleading against Plaintiffs.").

Thus, notwithstanding Mrs. Pahle's paltry pleading, we find that she seems to have given Defendants adequate notice of her derivative, state loss of consortium action, inasmuch as Defendants deposed Mrs. Pahle concerning this claim and moved for summary judgment on it.

We also refer to Fed.R.Civ.P. 15(b), regarding amendments to conform to the evidence, which states, "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Even if Mrs. Pahle's claim was not adequately noticed in the original Complaint, the derivative, state law consortium issue has been explored through the actions of both parties, and we will treat it as though it was adequately pled.

adequately suggests loss of consortium damages to overcome summary judgment.

■ The question remaining unresolved, however, to which we find murky responses in the case law, concerns whether Mr. Pahle's injuries are of the sort that can be the basis of a loss of consortium claim. There is some evidence that Mr. Pahle reinjured his arm during the incident with Officer Fryer. This type of physical injury, if it is proven to arise from improper actions (excessive force, assault and battery, false imprisonment) by Officer Fryer, could undisputably form the basis of a loss of consortium claim, i.e., "My husband was unable to work, do chores, bathe, socialize, etc. because of his injured arm."

However, the most significant repercussions of the incident were seemingly upon Mr. Pahle's psyche—emotional injuries. Pennsylvania case law, and case law around the country, is mixed on the question of whether emotional injuries can be the basis of a loss of consortium claim. *See generally* 16 A.L.R.4th 537, 1982 WL 198677 (1982), J.B. Jones, "Necessity of Physical Injury to Support Cause of Action for Loss of Consortium;" 1 Stein on Personal Injury Damages Treatise § 2:16 (3d ed.1997), J.A. Stein, "Spousal Consortium: Bodily Harm or Emotional Injury Requirement."

Defendants rely upon a Pennsylvania lower court decision, *Jackson v. Travelers Insurance Company,* 414 Pa.Super. 336, 606 A.2d 1384 (1992), for the proposition that a spouse cannot recover on a loss of consortium claim based solely on emotional trauma. In *Jackson,* a husband sought to recover under an uninsured motorist coverage provision of an insurance policy for emotional trauma suffered when he witnessed his wife's fatal auto accident. *Id.* at 337–338, 606 A.2d 1384. The plaintiff's claim did not concern torts, such as loss of

consortium or negligent infliction of emotional distress, but rather, the coverage under the policy, in light of the Motor Vehicle Financial Responsibility Law (MVFRL). *Id.* at 339, 606 A.2d 1384. The policy indicated that coverage extended to a party who was *"injured* as a result of a motor vehicle accident." *Id.* at 338, 606 A.2d 1384 (emphasis supplied). The court cited the MVFRL, which defined the term "injury" as "[a]ccidentally sustained *bodily harm* to an individual and that individual's illness, disease or death resulting therefrom." *Id.* (emphasis in original), citing 75 Pa.C.S. § 1702. The *Jackson* court found that the plaintiff's emotional trauma did "not fall within the statutory requirement that an eligible claimant suffer *bodily harm* as a result of the motor vehicle accident." *Id.* (emphasis in original).

The *Jackson* decision discussed loss of consortium in dicta, by way of comparison to the automobile insurance policy, concluding that "[a] consortium claim is not a claim for emotional or mental trauma. Rather a claim of consortium is .... grounded on the loss of a spouse's service after injury." *Id.* at 344, 606 A.2d 1384. Even if this statement were relevant to the *Jackson* court's final decision, it would not lead to the conclusion Defendants draw. The *Jackson* court's dicta suggests that Mrs. Pahle's claim could not be premised on *her* emotional trauma, but on services she lost from her husband after he was injured. It says nothing concerning the type of injuries Mr. Pahle needed to suffer to serve as the basis for a loss of consortium claim by his wife.

Moreover, even if *Jackson* were on point, we would not be bound by the lower state court's decision. *Smith,* 270 F.2d at 745; *Polselli,* 126 F.3d at 528; *Scranton Dunlop, Inc.,* 2000 WL 1100779, *1. Our duty is to predict how the Pennsylvania

Supreme Court would rule on the issue. *Id.*

The Pennsylvania Supreme Court has only addressed the issue in passing and in dicta, seemingly without any intention of resolving the question of whether a physical—as opposed to an emotional—injury is a necessary predicate for a loss of consortium claim. For example, in *Anchorstar v. Mack Trucks, Inc.*, 533 Pa. 177, 180, 620 A.2d 1120 (1993), the Pennsylvania Supreme Court decided one issue: that delay damages were not available on a loss of consortium claim under the Pennsylvania Rules of Civil Procedure, Rule 238, 42 Pa.C.S.A. Mr. Anchorstar suffered serious injuries in a highway accident and Mrs. Anchorstar asserted loss of consortium claims. *Id.* The court elaborated,

> The claim filed in the present case by Mr. Anchorstar was plainly one seeking compensation for bodily injury. In contrast, the claim filed by Mrs. Anchorstar was for loss of consortium. A claim for loss of consortium is quite different from a claim for bodily injury. *While it stems from a spouse's bodily injury*, it is nevertheless a separate and distinct claim. *Id.* (Emphasis supplied.).

The Supreme Court was clear that its *Anchorstar* opinion was to address a specific, limited issue of delay damages. Mr. Anchorstar had suffered severe bodily injuries, so the Supreme Court did not have before it the issue of whether Mrs. Anchorstar could recover loss of consortium damages for her husband's emotional injuries. We believe that the phrase "While it stems from a spouse's bodily injury ..." was not inserted to determine this issue, which was not before the *Anchorstar* court.

Again, in *Darr Construction Co.*, 552 Pa. at 408, 715 A.2d 1075, the Supreme Court stated, "It is well-settled that the [loss of consortium] claim is derivative, emerging from the impact of *one spouse's physical injuries* upon the other spouse's marital privileges and amenities." (Emphasis supplied.) However, the plaintiffs before the court had been injured in an explosion, and their wives were not seeking loss of consortium damages for emotional injuries. *Id.* at 402–403, 715 A.2d 1075. As in *Anchorstar*, we do not believe the Pennsylvania Supreme Court's statement should be interpreted to preclude loss of consortium damages for a wife whose husband received psychological injuries.

We only find one decision in the Third Circuit which devotes any serious consideration to the issue of whether, in Pennsylvania, a physical injury to a spouse, as opposed an emotional injury, is required as a foundation for a loss of consortium action brought by the uninjured spouse. In *Bowersox v. P.H. Glatfelter Co.*, 677 F.Supp. 307, 312 (M.D.Pa.1988), the plaintiff wife asserted an intentional infliction of emotional distress claim stemming from a sexual harassment complaint under Title VII, and her husband asserted a derivative loss of consortium claim. In a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), defendants argued that the loss of consortium claim was deficient in that there was no allegation that the wife suffered a disabling physical injury. *Id.* The court allowed the husband's claim to stand, stating,

> [D]efendants have cited no Pennsylvania law standing for the proposition that a disabling physical injury to one spouse is a predicate to the recovery by the other spouse for loss of consortium. The Pennsylvania Superior Court in [*Burns v. Pepsi–Cola Metropolitan Bottling Co.*, 353 Pa.Super. 571, 510 A.2d 810 (1986)] did not specify the type of injury on which a loss of consortium claim may be grounded, but merely states that the claim must be based on "an injury" to

the other spouse. The emotional and physical injuries allegedly suffered by Joanne Bowersox, i.e. severe emotional distress, depression, severe headaches, and nausea, could as easily cause deprivation to Allen Bowersox of his wife's society and companionship as could a disabling physical injury. Therefore, the allegations in Count Four adequately state a claim upon which relief can be granted. *Id.*

More recently, a fellow judge in our Eastern District of Pennsylvania, allowing a loss of consortium claim by a spouse whose husband was denied promotion (a non-physical injury), observed, "I could find no cases requiring, as defendant contends, a physical injury to the spouse not asserting the loss of consortium claim. To the contrary, ... *Dugan v. Bell Telephone,* 876 F.Supp. 713, 728 (W.D.Pa.1994), holds that the injury to the other spouse may be emotional or physical." *Fanelle,* 2000 WL 1801270, *13 n. 18.

In *Dugan,* holding that the deprivation of spousal services required to assert a loss of consortium claim needed to exceed merely pecuniary losses to the injured spouse (e.g., loss of income), the court observed that loss of consortium "recovery is limited to cases in which the plaintiff's spouse suffers injury of a personal nature, whether *physical or emotional.*" *Dugan,* 876 F.Supp. at 728 (emphasis supplied). The *Dugan* court dismissed the loss of consortium claim only when it dismissed the injured plaintiff's intentional infliction of emotional distress claim, from which the loss of consortium claim derived. *Id. See also Murray v. Commercial Union Ins. Co.,* 782 F.2d 432, 437–438 (3rd Cir.1986) (loss of consortium damages only possible in a tort action, not a contract action); *Browne v. Maxfield,* 663 F.Supp. 1193, 1207 (E.D.Pa.1987) (loss of consortium damages are available for *physical and*

*emotional* harms to injured husband, but not based on his pecuniary losses); *Berda v. CBS Inc.,* 800 F.Supp. 1272, 1274–1276 (W.D.Pa.1992) (no recovery for loss of consortium for fraud, negligent misrepresentation and breach of contract because injury "whether *physical or mental,* [must] be to the person of the spouse") (emphasis supplied); *Rost v. National R.R. Passenger Corp.,* 1989 WL 104809, *7–*8 (E.D.Pa. 1989) (where husbands' tort claims dismissed, leaving only breach of contract, fraud, promissory estoppel and public policy claims pending, "[T]here remain *no physical and emotional injury* claims from which the wives can derive their loss of consortium injury.") (Emphasis supplied).

Other District Courts in the Third Circuit, like the court in *Bowersox,* have allowed loss of consortium actions to proceed in cases where the injured spouses suffered emotional but no physical injuries. *See,* e.g., *Martin v. Municipal Publications,* 510 F.Supp. 255, 260 (E.D.Pa.1981) ("At trial, should Mr. Martin be able to convince a jury that as a result of defendant's [allegedly defamatory statements] he has suffered emotional and psychological distress, Mrs. Martin also may be able to establish that she is entitled to recover for the loss of his services, society and companionship."); *MacCord v. Christian Academy,* 1998 WL 848067, *9 (E.D.Pa.) (loss of consortium claim survives summary judgment where wife unable to cook, clean and care for children for months after defamation by defendants); *Curato v. Saluti,* 2000 WL 1974, *8 (E.D.Pa.1999) (where a spouse's gender discrimination claim survives summary judgment, loss of consortium claim also survives); *Nowosad v. Villanova University,* 1999 WL 744017, *3 (E.D.Pa.1999) (where a wife's Title VII and breach of contract claims survive summary judgment, husband's loss of consortium claims must also survive); *but see*

*Stauffer v. City of Easton*, 1999 WL 554602, \*1 (E.D.Pa.) (a spouse's right to recover under a civil rights statute such as the Pennsylvania Human Relations Act does not support a loss of consortium claim); *Goldberg v. City of Philadelphia*, 1994 WL 313030, \*13 (E.D.Pa.1994) (Title VII does not provide for loss of consortium damages). Even where a court held that § 1983 could not be the basis for loss of consortium damages,[9] the tort of intentional infliction of emotional distress, causing emotional but not physical injury, sufficed to underlie a loss of consortium claim by the uninjured spouse. *Verde v. City of Philadelphia*, 862 F.Supp. 1329, 1337 n. 5 (E.D.Pa.1994) (loss of consortium claim derives only from plaintiff's intentional infliction of emotional distress claim, not from Title VII, PHRA and § 1983 claims).

Outside Pennsylvania, a number of states have allowed loss of consortium claims predicated on strictly emotional injuries to a spouse. *See*, e.g., *Molien v. Kaiser Foundation Hospitals*, 27 Cal.3d 916, 167 Cal.Rptr. 831, 616 P.2d 813, 823 (1980) ("[D]efendants present no persuasive reasons to justify their proposal to limit recovery for loss of consortium to cases in which the plaintiff's spouse suffers severe physical injury. Indeed, we perceive compelling grounds for not drawing this line ... [I]t is irrefutable that certain psychological injuries can be no less severe and debilitating than physical injuries. We could accept defendants' position only by rejecting the manifest truth that a marital relationship can be grievously injured when one spouse suffers a traumatically induced neurosis, psychosis, chronic depression, or phobia."); *Barnes v. Outlaw*, 192 Ariz. 283, 285, 964 P.2d 484 (1998) ("We believe the better course is to allow [a loss of consortium] claim, even without physical injury, relying on the fact-finder to determine the legitimacy, nature, and extent of any alleged damages."); *Agis v. Howard Johnson Co.*, 371 Mass. 140, 355 N.E.2d 315, 320 (1976) (allowing loss of consortium claim predicated on spouse's intentional infliction of emotional distress claim); *Habelow v. Travelers Ins. Co.*, 389 So.2d 218 (Fla.Dist.Ct.App. 5th Dist.1980) (wife's loss of consortium claim appropriately derived from husband's claim for malicious intent to inflict mental anguish); *Roche v. Egan*, 433 A.2d 757 (Me.1981) (libel against husband could be basis for loss of consortium action by wife); *Exxon Corp., USA v. Schoene*, 67 Md.App. 412, 508 A.2d 142 (1986) (loss of consortium appropriate though husband suffered no physical harm in defamation action); *Stack v. Marcum*, 147 Mich.App. 756, 382 N.W.2d 743 (1985), appeal denied, 426 Mich. 872 (loss of consortium claim acceptably derives from husband's claim for tortious interference with business contract).

Other states have followed the Restatement Second of Torts, § 693 (1977), which requires "illness or other bodily harm" to underlie a loss of consortium claim by the uninjured spouse.[10] *See*, e.g., *Slovensky v. Birmingham News Co.*, 358 So.2d 474 (Ala.Civ.App.1978) (breach of employment contract cannot support a consortium claim, which requires physical injury);

---

**9.** We believe the Third Circuit would disagree with this conclusion. *See* our discussion in II.J, *infra*.

**10.** The Restatement Second, Torts § 693, cited in Stein Treatise § 2:16, states: *"Action by One Spouse for Harm Caused by Tort Against Other Spouse.* One who by reason of his tortious conduct is liable to one spouse for illness or other bodily harm is subject to liability to the other spouse for the resulting loss of the society and services of the first spouse, including impairment of capacity for sexual intercourse, and for reasonable expense incurred by the second spouse in providing medical treatment."

*Groat v. Town Board of Glenville,* 100 Misc.2d 326, 330, 418 N.Y.S.2d 842 (1979) (no loss of consortium claim possible without physical injury or physical confinement of spouse); *Browning–Ferris Industries, Inc. v. Lieck,* 881 S.W.2d 288, 294–295 (Tex.1994) (damages for loss of spousal consortium are not recoverable absent proof of physical injury).

Because Pennsylvania has no clear law on whether to allow loss of consortium claims by plaintiffs for emotional injuries to their spouses, we will attempt to predict how the Pennsylvania Supreme Court would rule, taking into account persuasive opinions outside the jurisdiction, in order to produce a clear statement of law applicable to Mrs. Pahle's claim. Following *Bowersox, inter alia,* we believe that even if Mr. Pahle cannot show that he was seriously, physically injured in the incident with Officer Fryer, Mrs. Pahle should be able to recover loss of consortium damages if Mr. Pahle proves his case and shows he was emotionally scarred. A police officer's excessive force, assault and battery and false imprisonment, if proven, might have serious, deleterious effects on a fragile individual's psyche, which could destroy a marriage, damaging the individual's spouse. In this case, the Pahles' marriage was destroyed by Mr. Pahle's run-in with Officer Fryer, according to Mrs. Pahle's testimony. Her husband became highly suspicious, temperamental and depressed, even suicidal, after the incident, neglecting himself and shunning social contact. Eventually, his new demeanor caused Mrs. Pahle such fear that she had him committed and felt she had no choice but to divorce him.

■ We also agree with those decisions, like *Dugan,* which hold that pecuniary loss alone will not justify a loss of consortium claim. If Mr. Pahle cannot show that he was at least emotionally injured as a result of the incident with Office Fryer in a way that impacted his ability to provide spousal services to his wife, then Mrs. Pahle's loss of consortium claim must fail.

In sum, echoing the Eastern District of Pennsylvania in *Martin* and the Arizona Supreme Court in *Barnes,* we believe that the only possible rationale for a physical injury requirement as a predicate to a loss of consortium claim—that it is less susceptible being abused by illegitimate claimants than an emotional injury requirement—is insufficient. The decision should be trusted to the fact-finder in each case to decide. Here, a trier of fact may assess the legitimacy, nature, and extent of any alleged physical or emotional damages to Mr. Pahle from the incident and the consequential impact, if any, upon Mr. Pahle's ability to provide his wife with spousal services, society and companionship. We will deny summary judgment as to Mrs. Pahle's derivative, state loss of consortium claim.

## J. Lynn Ann Pahle's § 1983 Claims Against Officer Fryer in her Individual Capacity

■ We believe that in the Third Circuit, a spouse may assert a claim under § 1983 that the government improperly interfered with her personal right to the services, society and companionship of her husband (i.e., consortium), denying her Due Process of law, to which she is entitled under the Fourteenth Amendment. We disagree in part with holdings in the Eastern District to the contrary, which state that loss of consortium claims cannot survive if they are premised on the federal civil rights statutes alone. *See, e.g., Verde,* 862 F.Supp. at 1337 FN5 (loss of consortium claim cannot derive from Title VII, PHRA and § 1983 claims); *Colburn v. City of Philadelphia,* 2001 WL 872960, *2

(E.D.Pa.2001) ("Claims for loss of consortium are not cognizable under § 1983."); *Ballas v. City of Reading,* 2001 WL 73737, *7 (E.D.Pa.2001) (husband lacks standing to sue under § 1983 based on action against wife except through prohibited derivative theory of liability).

■ It is well-established that a spouse, like Mrs. Pahle, has no standing to raise § 1983 claims resting on violations of her husband's constitutional rights. *See,* e.g., *Estate of Cooper By and Through Cooper v. Leamer,* 705 F.Supp. 1081, 1086 (M.D.Pa.1989) ("It is clear that one may not recover damages for the violation of another's civil rights."), citing *inter alia McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *O'Malley v. Brierley,* 477 F.2d 785 (3rd Cir.1973). In this limited respect, we agree with other decisions by District Courts in our Circuit that have considered consortium claims in conjunction with § 1983 claims. *See,* e.g., *Dunshee v. McGurk,* 1987 WL 18418, *2 (E.D.Pa.) (plaintiff may not assert loss of consortium because of civil rights violations against husband); *Quitmeyer v. Southeastern Pennsylvania Transp. Authority,* 740 F.Supp. 363, 370 (E.D.Pa.1990) ("There is no authority to permit spousal recovery for loss of consortium based on violations of the other spouse's civil rights."); *Wakshul v. City of Philadelphia,* 998 F.Supp. 585, 590 (E.D.Pa.1998) (where summary judgment entered on assault, battery, infliction of emotional distress and conspiracy tort claims, loss of consortium claim cannot survive premised on violations of other spouse's civil rights); *Wiers v. Barnes,* 925 F.Supp. 1079, 1095 (D.Del.1996) (no au-

thority to consider a derivative loss of consortium claim).

However, we believe that the complex Due Process analysis should not end with the clear-cut rejection of derivative constitutional claims. Third Circuit precedent suggests that a husband or wife should be able to claim violations of his or her *own* constitutional rights under § 1983 for unlawfully, government-imposed injuries to a spouse that have a devastating impact on their marriage; namely, he or she can allege deprivation of consortium without Due Process of law. Although the Third Circuit has never directly confronted the question,[11] in *Estate of Bailey v. County of York,* 768 F.2d 503, 509 n. 7 (3rd Cir.1985) (overruled on other grounds), the court indicated that a father could assert § 1983 claims for violations of his own constitutional rights concerning his child's death by child abuse in a county youth services center. Following the Seventh Circuit's decision in *Bell v. City of Milwaukee,* 746 F.2d 1205 (7th Cir.1984), the Third Circuit found, "Aleta Bailey's father also has a cognizable liberty interest in preserving the life and physical safety of his child from deprivations caused by state action, a right that logically extends from his recognized liberty inteest in the custody of his children and the maintenance and integrity of the family."

Since *Bailey,* several District Courts have employed the Third Circuit's reasoning, finding that standing exists for a parent to bring suit in his or her own right under § 1983 for the loss of the companionship, society and services of a child due to alleged governmental violation of constitutional Due Process. *See Schieber v. City of Philadelphia,* 1999 WL 482310, *2

---

11. Indeed, the Third Circuit has declined to consider the question in the past. *See, e.g., Livingstone v. North Belle Vernon Borough,* 12 F.3d 1205, 1215 n. 10 (3rd Cir.1993) ("[De-

fendants] contend that ... Mr. Livingstone's claim for loss of consortium is not recognized under section 1983....We do not consider [this] argument[ ].").

(E.D.Pa.). ("Parents have a liberty interest in the life of a minor child because of the parents' interest in custody and maintaining the family."); *Cooper*, 705 F.Supp. at 1087 ("In light of Bailey, *Bell*, and not the prior district court decisions in this circuit, [our decision] reflects the Third Circuit's view of parents' constitutional rights to the companionship of their children."); *White v. City of Philadelphia*, 118 F.Supp.2d 564, 567 n. 1 (E.D.Pa.2000) (following *Bailey* and its progeny); *Agresta v. City of Philadelphia*, 801 F.Supp. 1464, 1471 (E.D.Pa. 1992) (parents possess a constitutional right of familial association with their child), aff'd. *Agresta v. Sambor*, 993 F.2d 223 (3rd Cir.1993); *see also* a pre-*Bailey* decision, *Jones v. McElroy*, 429 F.Supp. 848, 852 (E.D.Pa.1977) (parents have standing to bring § 1983 suit on their own behalf when they are deprived of their child without Due Process).

We believe that the same rights existing in the Third Circuit between parents and children logically extend to spouses. The Supreme Court has frequently recognized the importance of the marital relationship. Though the Court has most often spoken of marriage in connection with the right to privacy, we believe the Supreme Court's language concerning the institution is equally apt when applied to the Due Process rights implicated here: marital integrity and spousal association. Marriage is "the most important relation in life" and the "foundation of the family and of society, without which there would be neither civilization nor progress." *Maynard v. Hill*, 125 U.S. 190, 205, 8 S.Ct. 723, 31 L.Ed. 654 (1888). "Marriage is the coming together for better or for worse, hopefully enduring, and intimate to the degree of being sacred. It is an association that promotes a way of life, not causes; a harmony in living, not political faiths; a bilateral loyalty, not commercial or social projects. Yet it is an association for as noble a purpose as any involved in our prior decisions." *Griswold v. Connecticut*, 381 U.S. 479, 486, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). If we take Mrs. Pahle's claims to be true, as we must on summary judgment, then we must conclude that Officer Fryer's actions injuring Mr. Pahle adversely impacted the endurance, intimacy, way of life and harmony of the Pahles' marriage.

The Seventh Circuit's *Bell* opinion, which formed the basis of the Third Circuit's *Bailey* decision, did not decide whether one possesses a constitutional right under § 1983 to recover for the loss of society and companionship resulting from the injury to or death of a spouse. *Bell*, 746 F.2d at 1244 n. 48.

However, *Bell* analyzes the legislative history surrounding the enactment of the Ku Klux Klan Act of 1871, in which § 1983 has its roots. *See also District of Columbia v. Carter*, 409 U.S. 418, 423, 425, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973) (An analysis of the purposes and scope of § 1983 must "take cognizance of the events and passions of the time at which it was enacted.... [Section] 1983 has its roots in § 1 of the Ku Klux Klan Act of 1871, Act of Apr. 20, 1871."). The *Bell* court noted Representative Butler's description of the 1871 Act: "This then is what we offer to the people of the United States as a remedy for wrongs, arsons and murders done. This is what we offer to a man whose house has been burned, as a remedy; to the woman whose husband has been murdered, as a remedy; to the children whose father has been killed, as a remedy." *Bell*, 746 F.2d at 1244.

We believe, based on Representative Butler's description cited in *Bell* and relevant here, that § 1983 was intended, in part, to compensate a wife for what she lost—that is, a vindication of her own

rights—when her husband was injured through unlawful government action.

Circuit and district courts around the country have held both for and against the *Bell/Bailey* proposition that spouses, parents and children can assert independent § 1983 claims for the vindication of their own Due Process rights when their family members are subjected to deadly or damaging unlawful actions by the government. *See,* e.g., *Crumpton v. Gates,* 947 F.2d 1418, 1422–1423 (9th Cir.1991) (child can recover, as of date of his birth, under § 1983 for unwarranted interference with his rights to familial companionship and society after unlawful shooting of father by police which occurred while child was still a fetus); *Rhyne v. Henderson County,* 973 F.2d 386, 391 (5th Cir.1992) ("Rhyne has standing to recover for her own injuries arising out of the wrongful death of her son."), reaff'd in *Flores v. Cameron Co., Tex.,* 92 F.3d 258, 271 (5th Cir.1996); *Robinson v. Johnson,* 975 F.Supp. 950, 955 (S.D.Tex.1996) (applying Texas law, loss of consortium available under § 1983 when a spouse, parent, or child suffers actionable non-fatal physical injury); *but see Trujillo v. Board of County Commissioners of the County of Santa Fe,* 768 F.2d 1186, 1190 (10th Cir.1985) (disagreeing with *Bell,* holding that allegation of intent to interfere with a particular relationship protected by the freedom of association is required to state a claim under § 1983); *Harbury v. Deutch,* 233 F.3d 596, 604 (D.C.Cir.2000) (refusing to extend a constitutional right of familial association to cases in which the government indirectly interfered with a spousal relationship by allegedly murdering woman's husband, noting that the *Bailey* and *Bell* decisions tend to disagree); *Helleloid v. Independent School District Number 361,* 149 F.Supp.2d 863, 877 (D.Minn.2001) (parents of child sexually abused by school district could not recover under § 1983 because they were not the target of the district's actions); *Winton v. Board of Com'rs of Tulsa Co., Okl.,* 88 F.Supp.2d 1247, 1254 (N.D.Okla.2000) (no constitutional right to spousal consortium, therefore no § 1983 claim for a spouse in her own right), explaining *Berry v. City of Muskogee, Okl.,* 900 F.2d 1489, 1506–1507 (10th Cir.1990); *Walters v. Village of Oak Lawn,* 548 F.Supp. 417, 419 (N.D.Ill.1982) (loss of consortium does not rise to the constitutional level).

 Regardless of the different outcomes nationally, we believe we would be obligated to apply the Third Circuit's *Bailey* reasoning to a situation in which a wife claims that her constitutional right to her husband's services and association was deprived by government action. We believe that spouses possess a liberty interest under the Due Process Clause which entitles them to pursue happy, intimate association free from unlawful government intrusion. When a law enforcement officer, under color of law, brutalizes a citizen, as Officer Fryer allegedly did, thereby causing serious physical and/or psychological injuries, a wife's ability to consort with her husband may be seriously impaired, warranting the payment of damages under § 1983 by the offending individual or institution.

 In the case before us, however, we find that Mrs. Pahle has inadequately pled her individual, constitutional claims under § 1983. As noted above (*see supra* at footnote 8), we can infer that Defendants received notice of Mrs. Pahle's derivative, state loss of consortium claim, which was vaguely included in Plaintiffs' Complaint. However, the Complaint gives no hint that Mrs. Pahle planned to argue that her own constitutional rights were violated—a novel argument—and Defendants could not have had notice of such allegations. "The

paramount purpose of a pleading in federal practice 'is to inform a party of the nature of the claims ... being asserted against him and the relief demanded by his adversary.'" 5 Wright & Miller, Fed.Practice and Procedure, § 1182 at 12. *See Continental Collieries v. Shober*, 130 F.2d 631, 635 (3d Cir.1942); *Usery v. Chef Italia*, 540 F.Supp. 587, 591 n. 11 (E.D.Pa.1982). Furthermore, "under our system of notice pleading, a complaint need not allege all the facts to show liability, but it must allege all the theories to show liability." *Muth v. Dechert, Price & Rhoads*, 391 F.Supp. 935, 938 (E.D.Pa.1975). Thus, although we believe Mrs. Pahle could have alleged a personal (as opposed to derived) right of recovery for loss of consortium under § 1983, she did not adequately allege this theory, and we grant summary judgment to Defendants as to all federal claims by Mrs. Pahle.[12]

### III. CONCLUSION

Based on the foregoing, we will deny summary judgment with respect to Mr. Pahle's claims against Officer Fryer under § 1983 that he was detained, arrested and transported without probable cause and using excessive force, his claim for attorney's fees under § 1988, and his state claims against Officer Fryer for assault and battery and false imprisonment. We will also deny summary judgment as to Mrs. Pahle's derivative state claim against Officer Fryer for loss of consortium. We will grant summary judgment as to all other issues and against all other Defendants.

---

12. We will not permit Mrs. Pahle to amend the Complaint to add her own federal claims, since § 1983 is subject to a two-year statute of limitations in Pennsylvania. *Goodman v. Luk-* *ens Steel Co.*, 482 U.S. 656, 662, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987). The incident occurred in 1998, nearly four years ago.