## Bedillion, Appellant, *v.* Frazee.

282

Argued April 23, 1962. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Sanford S. Finder,* with him *Vincent R. Massock,* for appellants.

*August L. Sismondo,* with him *James M. Marsh,* and *LaBrum and Doak,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, July 31, 1962:

Mrs. Jeanne A. Bedillion was seriously injured when the car in which she was riding as a passenger left the highway (Route 19) in Washington County and crashed into a concrete abutment. She and her husband, Harry A. Bedillion, brought an action of trespass against the defendant, Mary L. Frazee, the driver of the car, and in the ensuing trial the jury returned a verdict in her favor in the sum of $1000 and in favor of her husband in the amount of $1500. The trial court, after an appropriate motion, declared the verdicts to be "unreasonably low" and ordered a new trial. The defendant appealed to the Superior Court and the Superior Court reversed the order of the Court of Common Pleas of Washington County. We granted allocatur.

This Court has frequently said that an order awarding a new trial for inadequacy of verdict will not be reversed on appeal unless there has been "clear," "palpable," or "gross" abuse of discretion.[*] Although different adjectives have been used in describing the type of abuse which will call for a reversal of the order granting a new trial, it is abundantly clear that the appellate rule in Pennsylvania is to refrain from interfering with decisions of trial courts in situations of this character unless the order is one which cannot stand up in the light of reason. Certainly there is nothing in this case which would justify characterizing the lower court's order as one which flouts reason, defies good judgment, or challenges justice.

On the contrary, the record would not only justify the lower court's awarding of a new trial, but practically compel it to act as it did. Because of the accident Mrs. Bedillion sustained a brain concussion and injuries to her eyes, head, back, neck and legs.

---

[*] *Crouse v. Smith*, 381 Pa. 431; *Schwartz v. Jaffe*, 324 Pa. 324; *Henry v. Bulah*, 177 Pa. Superior Ct. 399.

Employed as a waitress she was compelled to remain away from her position for four months. She eventually returned to her job, not because she was well, but because economic conditions compelled her to resume remunerative work. At the time of the trial, a year and a half after the accident, she was still suffering from the effects of her injuries. Her eye condition was such that objects before her vision seemed framed in "fuzziness," she had muscular spasms in the neck area, she felt recurrent pains in her left shoulder and left knee, she was nervous and had difficulty in sleeping, she fatigued easily and could not stand for any long period of time. Dr. Emil Sposato testified that, on account of the injuries resulting from the accident, she would have a painful and disabled future: "She will have to look forward to several things as a result of the injury she received, one, she will have to look forward to any complication that may arise as a result of the concussion she received. These things do happen sometimes, yes, after a concussion. Two, she will have to look out for eye changes that might result from the severe injury that she had to her eyes. Three, she will have to look out for increase in disability in the injury to her neck; fourth, she will have to look out for disability as a result of injury to the lower back, five, she will have to look out for increase in the arthritic condition of her back as a result of having had her back injured."

The defendant argues that "The $2500 verdict is double the amount of all the special damages", but "special damages" do not cover the whole gamut of losses in personal injury cases. In this case there was also the item of pain and suffering endured and what could be still forthcoming, there was the item of medical expenses in the future, and there was the item of compensation to which the husband was entitled for what in law is known as consortium. This Court

said in *Kelley v. Mayberry*, 154 Pa. 440, 447: "In Cooley on Torts, 226, the general doctrine on the subject is stated thus: 'For an injury to the wife . . . which deprives her of the ability to perform services, or lessens that ability, the husband may maintain an action . . .' Speaking of the origin, etc., of the term 'services,' the same learned author says the word as now understood in connection with claims by husband for damages, etc., 'implies whatever of aid, assistance, comfort and society the wife would be expected to render to, or bestow upon her husband, under the circumstances and in the condition in which they may be placed, whatever those may be.'"

The jury, in awarding the wife-plaintiff $1500 said that this amount was to include "any future medical expenses." But if the evidence manifests injuries which call for future medical expenses far in excess of what the jury has specified, the verdict is irresponsive. Once the jury concludes that the defendant in a trespass case is guilty of negligence and there is no contributory negligence, it must award the full amount of damages which the evidence commands. In *Krusinski v. Chioda*, 394 Pa. 90, this Court said: "'A trial is not to be a mere conscious *approximation of reality.* It is not the province of a jury to decide *generally* the issue presented to it for decision, in the spirit of boundless generosity or restrained benevolence. If Mrs. Todd was entitled to a verdict from the defendant because of the injuries he inflicted upon her as the result of his negligence, she was entitled to *all* that the law provides in such a case. . . . When it is apparent that a jury by its verdict holds the defendant responsible for a whole loaf of bread, it may not then neglectfully, indifferently, or capriciously cut off a portion of that loaf as it hands it to the plaintiff.'" (Emphasis in original)

Dr. Sposato's testimony prognosticated a physical condition which might well envisage future medical expenses of a very substantial nature. He said Mrs. Bedillion could have "eye changes that might result from the severe injury that she had to her eyes." It is not necessary to dwell on the seriousness of an eye injury and what expenses in bulk can be anticipated in obtaining proper medical care to repair any damage done to the vital and delicate organ of vision. The doctor also spoke of further physical troubles for Mrs. Bedillion because of brain concussion, neck and back injuries.

The trial judge, supported by the unanimous opinion of the court en banc, concluded that "As the plaintiffs were entitled to recover for the admitted injuries, expenses, loss of wages and services, they are entitled to a verdict far in excess of the $1,500 awarded to the plaintiff wife and the $1,000 awarded to the plaintiff husband . . . The members of the Court have each arrived at the judgment that the amount of money awarded was not fair, adequate and just."

It is evident from the record, and the lower court so found, that the inadequate verdict was due to the fact that defendant's counsel attempted to portray Mrs. Bedillion as a person of loose morals. The jury was led to believe that if on the night of the accident Mrs. Bedillion was bound on a mission which did not appeal to the jury she was not entitled to the damages which might otherwise be due her. Of course, it goes without saying that in a personal injuries case, the jury has no jurisdiction over the morals of the parties except, of course, insofar as they relate to truthfulness and credibility. It wouldn't matter what Mrs. Bedillion's intended destination was that night, no one had the right to throw her against a concrete abutment. Even if she were going to a bull fight strictly prohibited by law no motorist could injure her and then be immune from responsibility for his tort.

Defendant's counsel insisted to the jury that in the early morning hours of April 30, 1959, Mrs. Bedillion was bound for a tryst with someone other than her husband. "Q. Mrs. Bedillion, you testified that Mrs. Frazee asked you to go to Canonsburg on the morning of April 30, 1959? A. Yes. Q. Isn't it true that you asked Mrs. Frazee to take you to Canonsburg because you and she had a hot date, isn't that true? A. I did not. Q. Isn't it also true that you and she had been to Canonsburg a couple of days before that on a date? A. No. Q. And that you had two men down there that were waiting for you for a date, isn't that true?"

It will be noted that Mrs. Bedillion denied the insinuations of defendant's counsel, but while it may not be difficult to remove a speck of dust from a juror's eye, it is impossible for a jury to pierce through a cloud of innuendo when a basket of ashes is thrown into the jury box.

The questioning continued: "Q. Isn't it true that you went home in another man's car, and that you took Mrs. Frazee and left her at her home and then you went along with this other man? A. I did not. Q. Do you know Jake Roach? A. Yes. Q. Isn't he the man that took you home that night? A. No, he didn't."

After this highly improper and inflammatory cross-examination, which could not help but place the plaintiff in a dubious light before the jurors, defendant's counsel then proceeded to have the defendant testify to conduct which could only further blacken the reputation of Mrs. Bedillion in the eyes of everyone in the courtroom. This testimony was irrelevant to the issue in the case because even if the plaintiff were a person of loose behavior, no one had the right to damage her vision and thus further cripple her in finding the proper moral path to follow in her life.*

---

* This discussion is not to be taken as implying that Mrs. Bedillion is not a moral person.

288

In cross-examining the wife-plaintiff, defendant put the following question: "Q. And that's when you fell down and she helped you up, isn't that true? A. I don't remember of me falling down and her helping me up. Q. Surely you wasn't that intoxicated?"

It wasn't claimed that Mrs. Bedillion was injured because she was intoxicated. She was a passive passenger in a car being driven by Mrs. Frazee, the defendant, at night in a heavy rain at a speed which would almost guarantee skidding and not stopping until the car crashed into some immovable object. That is how the accident occurred and that is how Mrs. Bedillion sustained her injuries.

The Superior Court properly stated the law with regard to the husband's right to damages for loss of consortium: "When a husband sues for the loss of his wife's consortium he is not obliged to prove the value of the loss in dollars and cents. The fact of marriage to the injured spouse is itself enough to support a finding for recovery because 'in such cases jurors, endowed with at least a modicum of common sense, may be supposed to have some knowledge of ordinary affairs of life.' [citing cases]".

However, after this correct statement of the law it stated that "Particular acts as well as reputation may be used as evidence in mitigation of damages in an action for criminal conversation: Ehrhart v. Bear, 51 Pa. Superior Ct. 39. The grounds for recovery in an action for criminal conversation are the violation of the right of consortium, loss of services, etc.: Matusak v. Kulczewski, 295 Pa. 208, 145 A. 94."

But the case at bar does not involve criminal conversation. The cross-examination by defendant's counsel and the direct evidence attempted to be introduced on the morals of the wife-plaintiff were not relevant or proper in any attempt to mitigate damages for the

loss of consortium due the husband-plaintiff. The criteria for damages in criminal conversation cases are quite different from those attending a personal injuries case where the question of morals is not a matter in issue. Thus the analogy attempted to be drawn by the Superior Court between this type of case and cases involving criminal conversation was wholly inapplicable.

In any trial the judge has no higher responsibility than that of keeping evidence, examination and cross-examination flowing within the channels of relevancy. Latitude is, of course, allowed for the purpose of clarifying matters which need clarification but any deviation from the main stream should be brief and not carried to the point where the deviation has muddied the channel of the principal issue. If in an ordinary personal injuries case, like the one at bar, the trial is converted into an Anthony Comstock revelry, the rules of evidence which have earned the respect of centuries will sink into the swamps of undisciplined procedure.

The court below allowed a deviation not required by the issue involved, but it is to its credit that it corrected the error. It is unquestioned that it properly evaluated what happened in the case and applied the required remedy when it said: "The Court is satisfied that the repetitious, improper questions, together with the irrelevant testimony given by the defendant, did create prejudice against the plaintiffs in the minds of the jurors and the jury reduced its verdicts accordingly. The Court should set aside verdicts when they are clearly inadequate and patently insufficient. Krusinski v. Chioda, 394 Pa. 90."

The order of the Superior Court is reversed with a venire facias de novo.

Mr. Justice BENJAMIN R. JONES, Mr. Justice COHEN and Mr. Justice EAGEN concur in the result.