715 A.2d 1075

**DARR CONSTRUCTION COMPANY and Rockwood Casualty Insurance Company, Appellants,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (Richard WALKER, Donald Reed, James Walker, Neil Rayman and Donald Ziegler), Appellees.**

Supreme Court of Pennsylvania.

Argued Sept. 15, 1997.

Decided July 21, 1998.

Pamela G. Cochenour, Michael A. Cohen, Pittsburgh, for Darr Const. Co. and Rockwood Cas. Ins. Co.

Vincent J. Barbera, Somerset, for Richard Walker, Donald Reed, James Walker, Neil Rayman and Donald Ziegler.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE and NIGRO, JJ.

## *OPINION*

ZAPPALA, Justice.

In these consolidated appeals and cross-appeals, the employer raises the issue of whether its subrogation interest in the claimants' recovery from a third party tortfeasor is to be calculated by utilization of the gross method or the net method. Claimants raise the issue of whether the employer has a right of subrogation over proceeds recovered by their wives through the settlement of claims for loss of consortium.

We recently resolved the first inquiry in *P & R Welding v. Workmen's Compensation Appeal Board (Larry J. Pergola)*, 549 Pa. 490, 701 A.2d 560 (1997), where we held that the gross method should be employed to calculate an employer's subrogation interest in a claimant's recovery from a third party. Regarding the second issue, we hold that, under these circumstances, the employer has no subrogation interest in the claimants' spouses' recoveries for loss of consortium. Accordingly, we affirm in part and reverse in part the order of the Commonwealth Court.

On August 31, 1988, Richard Walker, Donald Reed, James Walker, Neil Rayman and Donald Zeigler (Claimants) were severely injured as a result of a gas explosion which occurred during their employment with Darr Construction Company (Darr). Claimants received workers' compensation benefits pursuant to notices of compensation payable. Claimants and their spouses [1] subsequently commenced civil actions in the Court of Common Pleas of Somerset County against Peoples Natural Gas Company (Peoples) seeking damages for the

---

1. All Claimants were married with the exception of Richard Walker.

injuries they suffered in the explosion. Claimants' wives also sought damages for loss of consortium. Each Claimant settled his third-party action with Peoples and Claimants' spouses settled their loss of consortium claims. The wives signed separate settlement agreements and received separate settlement checks. Darr was not involved in the settlement negotiations.

Darr subsequently filed review petitions, seeking subrogation of Claimants' recoveries pursuant to Section 319 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 671.[2]

Stipulations of fact were entered into before the respective referees. The parties stipulated to the total amount of the third-party recovery; the amount of the consortium claim, if any; the total compensation lien at the time of settlement (including both indemnity payments and medical expenses); attorneys' fees; total expenses; weekly compensation rate; and date of return to work, if applicable.[3]

**2.** This section provides in pertinent part as follows:

**§ 671. Subrogation of employer to rights of employee against third persons; subrogation of employer or insurer to amount paid prior to award.**

Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employe, his personal representative, his estate or his dependents. The employer shall pay that portion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement. Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe, his personal representative, his estate or his dependents, and shall be treated as advance payment by the employer on account of any future instalments of compensation. . . .

77 P.S. § 671.

**3.** The parties stipulated to the following:

The parties disagreed on the method of calculating Darr's subrogation interest; Claimants argued in support of the gross method while Darr favored the net method. The basic difference between the two methods is the treatment of legal expenses associated with the recovery or settlement of the third party civil action.[4] Claimants advocated deducting Darr's pro-rata share of expenses from the amount it owed Darr in subrogation and then paying Darr the net amount. Darr asserted that the accrued compensation lien should be paid in full at the time of settlement, with it reimbursing each Claimant his pro-rata share of legal expenses over the grace period. The parties also disagreed as to the payment of expenses associated with future compensation and as to whether Darr had a subrogation interest in the Claimants' wives' recoveries for loss of consortium.

The referees reached the following conclusions: Darr was entitled to determine its subrogation interest using the net method.[5] Because the spouses executed separate releases and

4. Under the net method, all legal costs associated with the recovery, as well as the accrued lien, are deducted from the total recovery for purposes of determining the amount available as future

credit for the employer. The gross method, however, pro-rates the legal fees as the employer receives the benefit of the grace period.

5. The following demonstrates the referees' calculations pursuant to the net method:

(1)  Future Compensation  =  Total  —  Expenses  —  Accrued
     Payable                  Recovery   of Recovery   Comp. Lien

The term "future compensation payable" can also be referred to as "balance of recovery."

(2)  Grace Period  =  $\dfrac{\text{Future Compensation Payable}}{\text{Weekly Compensation Rate}}$

(3)  Employer's Share  =  $\dfrac{\text{Accrued Comp. Lien}}{\text{Total Recovery}}$  X  $\dfrac{\text{Total Costs}}{\text{of Recovery}}$
     of Expenses

For example, the referee concluded that the future compensation payable to Claimant Richard Walker was $54,872.59. The calculation using the figures in footnote three is slightly different apparently due to the parties' stipulation of round numbered amounts. Darr's grace period was determined by dividing the future compensation payable by Walker's weekly compensation rate of $188.50, which equaled 291.10 weeks. The future compensation payable is treated as advance compensation benefits to Walker which, at the rate of $188.50 per week,

received separate settlement checks, they established a separate loss to which Darr had no right of subrogation. Regarding the consortium settlements of Claimants Walker and Rayman, a different referee concluded that because there was no jury verdict or court ruling concerning the claims, they were subject to Darr's right of subrogation. Accordingly, the referees ordered each Claimant to pay immediately to Darr the gross amount of its accrued compensation lien and directed Darr to pay each Claimant his pro-rata share of the expenses of recovery during the grace period until paid in full.

Claimants and Darr appealed to the Workers' Compensation Appeal Board (Board). The Board utilized the gross method to calculate Darr's subrogation interest and held that Claimants should have paid the net amount of its accrued compensation lien, i.e., the compensation lien less allocated costs and fees.[6] The Board required Darr to reimburse Claimants during the grace period for its pro-rata share of the legal expenses attributable to the future compensation lien. The Board also ruled that the consortium settlements of Claimants' spouses were subject to Darr's right of subrogation. The parties appealed and cross-appealed to the Commonwealth Court.

would require the suspension of benefits for 291.10 weeks. Also, Darr's share of expenses equals 34% of the total expenses, amounting to $20,065.56.

**6.** The following demonstrates the Board's calculations pursuant to the gross method:

(1)  Future Comp. Payable  =  Total Recovery – Accrued Comp. Lien

(2)  Grace Period  =  $\dfrac{\text{Future Compensation Payable}}{\text{Weekly Compensation Rate}}$

(3)  Employer's Share of Expenses  =  $\dfrac{\text{Accrued Comp. Lien}}{\text{Total Recovery}}$  X  Total Costs of Recovery

Thus, following the example regarding Claimant Richard Walker, the grace period pursuant to the gross method would be equal to Walker's total recovery of $172,500 minus the accrued compensation lien of $58,611, divided by the weekly compensation rate of $188.50. This results in a 604.18 week grace period as opposed to the 291.10 week grace period arising from utilization of the net method. This example illustrates that the difference between the two methods of calculation results in a shorter grace period under the net method, but correspondingly, the employer has no obligation to repay legal expenses during that time.

In a published *en banc* opinion, the Commonwealth Court affirmed the Board's utilization of the gross method in determining Darr's subrogation interest. It held that an employer should bear its fair share of the legal expenses at the same time that it receives payment of its accrued compensation lien. It concluded that where a claimant's third party recovery is large enough to satisfy all or part of the employer's future compensation lien, attendant with this benefit is the employer's obligation to pay its share of legal expenses attributable thereto.[7] Regarding the treatment of future medical expenses incurred by a claimant during the grace period, the court noted that the preferred method is for the employer to pay the expenses outright as they are incurred. It found, however, that the Board's method of charging each Claimant's future medical expenses against Darr's grace period credit, thus reducing the number of weeks in each grace period, was also acceptable.

The Commonwealth Court disposed of the second issue by holding that Claimants' entire recovery, including the settlements of the loss of consortium claims, was subject to Darr's subrogation interest. It held that in order to shield a loss of consortium recovery from an employer's subrogation interest, there must be either an adjudication by an impartial factfinder regarding the amount attributable to the loss of consortium claim or an agreement between the claimant and the employer regarding the same. The court concluded that the settlement agreement entered into by the Claimants and Peoples could not limit Darr's right to subrogation, especially since Darr was not given an opportunity to be involved in the negotiations or the allocation of loss of consortium recovery.

Judge Friedman filed a concurring and dissenting opinion in which Judge Smith joined. Judge Friedman agreed that the gross method should be utilized in determining Darr's subro-

7. The Commonwealth Court noted that although the Board applied the gross method when computing the grace period in the James Walker case, the Board failed to order Employer to reimburse Claimant weekly during the grace period the amount of legal expenses attributable to that grace period. Accordingly, the court corrected what it termed an "apparent oversight" by the Board.

gation interest, but dissented to the majority's disposition of the loss of consortium issue. She found no statutory authority granting an employer an interest in loss of consortium recovery. Judge Kelly filed a concurring opinion, in which he joined the majority's reasoning as to all issues except that regarding the loss of consortium settlements. Judge Kelly stated that the spouses' recoveries should be subject to subrogation on the ground that they were derivative of the claims brought by Claimants.

■ As noted, the first issue regarding the appropriate method to calculate an employer's subrogation interest in a claimant's third party recovery is controlled by our recent decision in *P & R Welding*. We there held that the plain language of section 319 of the Workers' Compensation Act supported the implementation of the gross method, which requires the employer to pay its proportionate share of legal fees at the time it receives repayment of its accrued lien. We concluded that the legal expenses attributable to future credits must be prorated as the employer becomes entitled to the future credit received. The Board properly calculated Darr's subrogation interest pursuant to this method and the Commonwealth Court affirmed. Accordingly, we affirm that portion of the Commonwealth Court order.

We must next examine the Claimants' issue regarding whether an employer has a subrogation interest in a loss of consortium recovery of a claimant's spouse when the spouse signed a separate settlement agreement and received a separate settlement check from the third party tortfeasor. Claimants offer three principal reasons why Darr is not entitled to subrogation of the loss of consortium settlements. They first contend that the right to loss of consortium recovery is a separate property right personal to their spouses. Second, Claimants argue that there is no statutory provision granting Darr an interest in the loss of consortium settlements. Finally, they contend that recognizing a subrogation interest in the employer would require their spouses to forfeit their recoveries merely because they decided to settle their claims rather than go to trial.

. **[2, 3]** In a claim for loss of consortium, the losses alleged are personal to the uninjured spouse and arise from the deprivation of the injured spouse's society and services. It is well-settled that the claim is derivative, emerging from the impact of one spouse's physical injuries upon the other spouse's marital privileges and amenities. *Kowal v. Commonwealth, Department of Transportation,* 100 Pa.Cmwlth. 593, 515 A.2d 116, 119 (1986). It is equally established that a loss of consortium claim remains a separate and distinct cause of action. As we stated in *Anchorstar v. Mack Trucks, Inc.,* 533 Pa. 177, 620 A.2d 1120 (1993):

> A claim for loss of consortium is quite different from a claim for bodily injury. While it stems from the spouse's bodily injury, it is nevertheless a separate and distinct claim. Loss of consortium is a loss of services, society, and conjugal affection of one's spouse. *Bedillion v. Frazee,* 408 Pa. 281, 285, 183 A.2d 341, 343 (1962); *Hopkins v. Blanco,* 224 Pa.Super. 116, 302 A.2d 855 (1973), aff'd, 457 Pa. 90, 320 A.2d 139 (1974). One who has suffered a loss of consortium has not sustained a bodily injury but rather has experienced an injury to marital expectations. Clearly, too, the mere fact that such a claim is joined in the same civil action as a claim for bodily injury does not alter its basic character as a separate and distinct claim.

*Id.* at 180, 620 A.2d at 1121–1122.[8]

Having recognized the independent nature of a loss of consortium claim, we must next review the statutory language to determine whether an employer possesses a subrogation interest therein. As noted, § 319 provides that where an injury is caused in whole or in part by a third party, "the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents against such third party." Here, Darr is asserting a subrogation interest in a right possessed by Claimants' spouses. Claim-

---

**8.** In fact, at common law, a cause of action for bodily injuries and a spouse's loss of consortium claim could only be sued for in separate actions; their joinder was not permitted. See *Nunamaker v. New Alexandria Bus Co.,* 371 Pa. 28, 32, 88 A.2d 697, 699 (1952).

ants' wives do not fall within the aforementioned statutory categories subject to subrogation. They are clearly not employees, estates or personal representatives. Likewise, they are not "dependents" within the meaning of § 319 since they are not "persons entitled to compensation under the Act." See *Anderson v. Greenville Borough, et al.*, 442 Pa. 11, 15, 273 A.2d 512, 514 (1971)

Furthermore, we have held that the doctrine of subrogation implies the need for some identity between the fund created by the insurance agreement and the fund created by the cause of action against the tortfeasor. *Id.* at 16, 273 A.2d at 515. There must be an equatability between the obligation of the compensation payor and the obligation of the tortfeasor payor, so that the two funds are going to satisfy the same duty, liability or obligation to the same person. *Id.* Here, the obligations satisfied by the third party loss of consortium recovery are not equatable with the obligations satisfied by Claimants' workers' compensation benefits. The former compensates Claimants' wives for their loss of their husbands' companionship and services while the latter compensates Claimants for their bodily injury.

Darr relies on a line of cases where the employer was granted a subrogation interest in damages recovered from loss of consortium claims. In *Dasconio v. Workmen's Compensation Appeal Board (Aeronca, Inc.)*, 126 Pa.Cmwlth. 206, 559 A.2d 92 (1989), a claimant and his wife commenced an action against a third party defendant. The civil case was settled and both the claimant and his spouse signed a release. In a subsequent workers' compensation action, the employer was granted a subrogation interest in the entire recovery. The Commonwealth Court concluded that because the third party made a single lump sum payment to the claimant and his wife jointly, the workers' compensation authorities could not place a separate value on the damages to which the wife might have been entitled. The court held that there is no authority or jurisdiction in the workers' compensation system for determining the amount of a wife's consortium damages previously

recovered in a common pleas proceeding.[9]  *See also Bell Telephone Company of Pennsylvania v. Workmen's Compensation Appeal Board (Artuch)*, 127 Pa.Cmwlth. 569, 562 A.2d 427 (1989) (unless claimant and employer agree to designate a consortium claim amount, such determination is solely one for tort proceeding and not cognizable by compensation authorities); *Warner Lambert Company, Inc. v. Workmen's Compensation Appeal Board (Brown)*, 133 Pa.Cmwlth. 250, 575 A.2d 956 (1990) (because there was no jury verdict and no ruling attributing the amount of recovery to a loss of consortium claim, the total recovery is subject to the employer's subrogation interest); *Pendleton v. Workmen's Compensation Appeal Board (Congoleum Corp.)*, 155 Pa.Cmwlth. 440, 625 A.2d 187 (1993) (loss of consortium claim of claimant's spouse is subject to employer's subrogation interest because the only evidence of its apportionment is a self-serving letter of claimant's counsel).

██ The flaw in Darr's argument is that *Dasconio* and its progeny do not stand for the proposition that the derivative nature of a loss of consortium claim requires that the employer retain a subrogation interest in the recovery.[10]  Rather, the cases suggest that because there is no authority for a workers' compensation official to determine the amount attributable to the loss of consortium recovery, the entire third party recovery must be subject to subrogation.  Here, the workers'

**9.**  The court quoted the following from *Fidler v. Workmen's Compensation Appeal Board (United Cable Corp.)*, 83 Pa.Cmwlth. 155, 478 A.2d 907, 911 (1984):

Unfortunately for Claimant, however, the workmen's compensation authorities have no jurisdiction to determine questions of liability as between third-party tortfeasors, including the employer;  such issues must be determined in third-party common pleas cases and are not cognizable in workmen's compensation proceedings.  See *Mazzeo v. M. & J.B. McHugh*, 199 Pa. Superior 400, 185 A.2d 638 (1962).  Obviously, the time for Claimant to have raised the issue of the employer's negligence was in the trial court proceeding before, or as a part of, the third-party settlement.

**10.**  If the derivative nature of the claim vested the employer with a subrogation interest, the employer would obtain such an interest in all recoveries for loss of consortium, not merely those where a judicial determination was lacking.

compensation authorities did not have to attribute a portion of the recovery to the loss of consortium claims because Claimants' spouses signed separate settlement agreements and received separate payment checks for their recovery. The damages recovered by Claimants' wives should not become subject to subrogation by Darr merely because the wives decided to settle their claims rather than proceed to trial. The Commonwealth Court's holding to the contrary runs counter to the general policy favoring settlements and discouraging litigation.

We recognize that a potential for abuse exists in the structuring of loss of consortium settlements between a claimant and a third party tortfeasor due to the lack of participation by the employer in the proceeding. A claimant would have the opportunity to shield his recovery from the employer's subrogation interest by fraudulently attributing an unwarranted amount of the damages to the spouse's claim for loss of consortium. Fear of abuse, however, is an impermissible basis upon which to require the forfeiture of a spouse's valid recovery. In the event the settlement is unreasonably apportioned, an employer may always seek recourse in the court of common pleas. Our Court can not create a mechanism whereby workers' compensation officials could reexamine third party settlements for purposes of determining the employer's subrogation interest. Such action can only be taken by the General Assembly.

Accordingly, that portion of the Commonwealth Court order which affirmed the Board's utilization of the gross method for calculating an employer's subrogation interest is affirmed. The portion of the Commonwealth Court order granting Darr a subrogation interest in the loss of consortium settlements of Claimants' wives is hereby reversed.

NEWMAN, J., did not participate in the consideration or decision of this case.