J-A17042-21

2021 PA Super 156

| | | |
|---|---|---|
| JOHN GLEASON AND ELAINE GLEASON, H/W | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ALFRED I. DUPONT HOSPITAL FOR CHILDREN AND NEMOURS FOUNDATION | : | No. 1872 EDA 2020 |
| | : | |
| JOHN GLEASON AND ELAINE GLEASON, H/W | : | |
| | : | |
| v. | : | |
| | : | |
| HSC BUILDERS & CONSTRUCTION MANAGERS | : | |
| | : | |
| APPEAL OF: THE HARTFORD INSURANCE GROUP, WORKER'S COMPENSATION LIENHOLDER | : | |

Appeal from the Order Entered August 20, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 160502115,
No. 170503992

BEFORE:  McLAUGHLIN, J., KING, J., and PELLEGRINI, J.*

OPINION BY PELLEGRINI, J.:                    Filed: August 5, 2021

The Hartford Insurance Group, workers' compensation lienholder, (The

Hartford) appeals from the order entered in the Court of Common Pleas of

_____

* Retired Senior Judge assigned to the Superior Court.

Philadelphia County (trial court) denying its second petition to intervene in this personal injury action between John and Elaine Gleason, H/W (collectively, the Gleasons) and Alfred I. DuPont Hospital for Children, *et al.* (Dupont Hospital). The Hartford challenges the trial court's determination that this appeal is premature and claims that the court erred in denying it party status. We reverse the trial court's order and remand with instructions to allow the requested intervention.

**I.**

**A.**

The relevant facts and procedural history of this case are as follows. Mr. Gleason was employed as an MRI Field Service Technician by Medical Imaging Group (MIG). The Hartford provides workers' compensation insurance to MIG. On May 29, 2015, while Mr. Gleason was performing maintenance on an MRI machine at Dupont Hospital, a fire and explosion occurred in the main distribution panel. Mr. Gleason's hair, skin and clothing caught fire and he suffered severe burns, scarring, disfigurement and temporary blindness. The Gleasons filed two actions against various defendants in 2016 and 2017, alleging negligence and loss of consortium. The defendants answered the complaints and filed cross-claims and the actions were consolidated in February 2018.

The Gleasons reached a proposed settlement agreement with the defendants and they filed a petition seeking the trial court's approval of its

terms on December 12, 2019. The agreement provided for a total settlement payment of $1.45 million dollars. That sum was allocated between the Gleasons, with $580,000 to Mr. Gleason and $870,000 to Mrs. Gleason for the loss of consortium claim. On December 25, 2019, all defendants joined in support of the Gleasons' petition without taking a position on the allocation between the spouses. The trial court approved the unopposed settlement on January 27, 2020, after oral argument.[1] Because the cross-claims were not disposed of by the settlement agreement, the case remained listed for trial.

**B.**

The Hartford has paid $988,474 to and on behalf of Mr. Gleason in medical expenses, wage loss benefits and to fund a medical set aside account for his future medical expenses. The Gleasons offered to pay The Hartford $352,287, representing the amount remaining from Mr. Gleason's settlement after deduction of attorneys' fees and costs.[2]

---

[1] Although it was not a party to the litigation, The Hartford filed an appeal from the trial court's order approving settlement, which this Court quashed. (**See** Gleasons' Brief, at 4-5).

[2] Because a loss of consortium claim is derivative in nature and arises from the impact of the spouse's physical injuries on the marriage rather than from the injuries themselves, there is no identity of funds. An employer, therefore, has no subrogation interest in a spouse's recovery for loss of consortium. **See Thompson v. W.C.A.B.** (**USF&G Co.**), 781 A.2d 1146, 1154–55 (Pa. 2001). Our Courts have recognized the potential for abuse in this context because settlement agreements can be fraudulently structured to defeat a valid subrogation interest. **See id.**

On April 20, 2020, The Hartford filed a petition to intervene, seeking protection of its statutory lien interest under Section 319 of the Pennsylvania Workers' Compensation Act (WCA).[3]  The trial court entered an order denying The Hartford's request to intervene on May 14, 2020.

The Hartford filed a second petition to intervene, which the trial court denied on August 20, 2020.  This timely appeal followed.  The trial court filed a Rule 1925(a) opinion on February 9, 2021, stating that The Hartford's appeal is premature and not ripe for our review.  **See** Pa.P.A.P. 1925.  The court requested that the appeal "be suspended until the conclusion of trial on the outstanding cross-claims."  (Trial Court Opinion, 2/09/21, at 2).[4]

---

[3] Section 319 of the WCA is codified at 77 P.S. § 671 and governs the subrogation rights of an employer and its insurance carrier.  **See Suburban Delivery v. W.C.A.B.** (**Fitzgerald**), 858 A.2d 219, 222 (Pa. Cmwlth. 2004). The Act requires subscribing employers to provide compensation to injured employees, regardless of fault, either through insurance or self-insurance. **See Thompson, supra** at 1153.  In exchange, employers are vested with "the absolute right of subrogation respecting recovery from third-party tortfeasors who bear responsibility for the employee's compensable injuries." **Id.** (citation omitted).

[4] The cross-claims remained outstanding at the time the trial court filed its opinion.  (**See** Trial Ct. Op., at 2).  The court's March 19, 2021 trial work sheet indicates that the last remaining cross-claim proceeded to binding arbitration and all other claims have been resolved.  (**See** Trial Work Sheet, 3/19/21).

## II.

## A.

On appeal, The Hartford contends that the trial court's order denying intervention is final and appealable because the ruling denies it party status and prevents it from receiving notice of all filings in this case. It maintains that the order has the practical effect of denying it the ability to fully protect its subrogation rights, and that it impacts its standing to appeal the January 2020 order approving settlement. The Hartford argues that party status is necessary to adequately protect its lien rights by challenging the unfair 40/60% apportionment of the settlement proceeds between Mr. and Mrs. Gleason. It claims that the higher allocation to Mrs. Gleason for her loss of consortium claim is designed to shield the settlement proceeds from its recovery of the statutory lien.

## B.

It is well settled that, "[i]n order for this Court to have jurisdiction, an appeal must be from an appealable order." ***Commonwealth v. Mitchell***, 72 A.3d 715, 717 (Pa. Super. 2013) (citation omitted). Generally, an appellate court only has jurisdiction to review final orders. ***See*** Pa.R.A.P. 341.

With regard to orders denying intervention, "Pennsylvania law does allow for an appeal as of right from [such orders] in circumstances that meet the requirements of the collateral order doctrine as embodied in Pennsylvania Rule of Appellate Procedure 313. ***See*** Pa.R.A.P. 341 (note)." ***In re Barnes***

***Found***, 871 A.2d 792, 794 (Pa. 2005).[5]  "A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost."  Pa.R.A.P. 313(b).  Thus, the collateral order doctrine permits an appeal from an order that satisfies the three requirements of separability, importance and irreparability.  ***See Shearer***, ***supra*** at 858.  We construe this doctrine narrowly to "avoid undue corrosion of the final order rule, and to prevent delay resulting from piecemeal review of trial court decisions. "  ***Id.*** (citation omitted).

> With regard to the first prong of the collateral order doctrine, an order is separable from the main cause of action if it is entirely distinct from the underlying issue in the case and if it can be resolved without an analysis of the merits of the underlying dispute.  With regard to the second prong, a right is important if the interests that would go unprotected without immediate appeal are significant relative to the efficiency interests served by the final order rule.  Notably, the rights must be deeply rooted in public policy going beyond the particular litigation at hand.  With regard to the third prong, a right sought to be asserted on appeal will be 'irreparably lost' if, as a practical matter, forcing the putative appellant to wait until final judgment before obtaining appellate review will deprive the appellant of a meaningful remedy.

---

[5] "Whether an order is appealable under the collateral order doctrine under Pa.R.A.P. 313 is a question of law, subject to a *de novo* standard of review, and the scope of review is plenary."  ***Shearer v. Hafer***, 177 A.3d 850, 855 (Pa. 2018) (citation omitted).

***Keesee v. Dougherty***, 230 A.3d 1128, 1132 (Pa. Super. 2020) (citation omitted).

In the instant case, the issue of whether The Hartford has the right to be granted party status is a discrete claim that has no bearing on the underlying negligence and loss of consortium dispute. The order is, therefore, separable from the main cause of action. Turning to the second prong, the ability of an insurance carrier that has paid substantial workers' compensation benefits to and on behalf of an employee to recover its statutory lien from the award of money the employee has received in a civil lawsuit is too important to be denied review, as the carrier has an absolute right to recovery and its interest outweighs any efficiency interest in discouraging piecemeal litigation. Furthermore, as previously noted, our Courts have recognized the potential for fraud in this context where a derivative loss of consortium claim is involved. As to the third prong, we find that denying review of the court's decision on intervention would impact The Hartford's standing and ability to ever challenge the 60% apportionment of the settlement proceeds to the loss of consortium claim, which it asserts is unfair and designed to shield the settlement funds.

Having found that the requirements of the collateral order doctrine have been met and that this Court has jurisdiction over this appeal, we turn to the merits of The Hartford's claim it is entitled to intervention.[6]

**C.**

As we previously noted, under Section 319 of the WCA, an employer or insurance carrier that pays workers' compensation benefits to an injured employee is entitled to recover a portion of the benefits from any award of money the employee receives in a civil lawsuit. Section 319 provides specific direction for the distribution of an employee's settlement from a third-party tortfeasor between the employee and the employer or insurance carrier. *See Dep't of Labor & Indus. Bureau of Workers' Comp. v. Workers' Compensation Appeal Board* (*Excelsior Ins.*), 58 A.3d 18, 20 (Pa. 2012). "At its most basic, Section 319 provides that the employer [or carrier] shall recover from the settlement the amount it previously paid to the claimant, minus the claimant's legal costs of recovering that amount." *Id.*

Additionally, Pennsylvania Rule of Civil Procedure 2327 governs intervenor status. This Rule provides: "At any time during the pendency of an action, a person not a party thereto **shall** be permitted to intervene therein [if] . . . (2) such person is so situated as to be adversely affected by a

---

[6] We review a trial court's decision whether to allow intervention for an abuse of discretion. *See Johnson v. Tele-Media Co. of McKean Cty.*, 90 A.3d 736, 739 (Pa. Super. 2014).

distribution or other disposition of property in the custody of the court or of an officer thereof; or . . . (4) the determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action." Pa.R.C.P. 2327 (emphasis added). "Under this rule, **an insurance carrier who has paid workers' compensation benefits may intervene in an employee's third party action** in order to protect and preserve the carrier's right of subrogation." *Van Den Heuval v. Wallace*, 555 A.2d 162, 163 (Pa. Super. 1989) (citations omitted; emphasis added).

In *Van Den Heuval*, this Court determined that a workers' compensation carrier was entitled to intervene in a third-party tort action to the extent of the workers' compensation benefits which it had paid to the employee. The Court noted that it was unrealistic to suggest that the carrier's interest could be adequately protected by a subsequent action against the employee. It observed that if the third-party action settled without notice to the carrier, the subrogation claim would essentially be "at the mercy of the employee who, having received payment, can dispose of the settlement proceeds as he chooses." *Id.* at 163. The panel concluded that the trial court's order denying intervention had "the practical effect of denying relief to [the carrier], which cannot fully protect its subrogation interest in any other way [and therefore] that the order denying intervention in this case is an appealable order." *Id.*

Likewise, in this case, lack of party status denies The Harford the ability to fully protect its subrogation interest and left it without recourse to effectively challenge the consortium apportionment contained in the unopposed settlement agreement. Although The Hartford paid nearly one million dollars to and on behalf of Mr. Gleason as a result of the workplace accident, the settlement agreement was structured in a manner that limited its lien to approximately $350,000.

In sum, based on the foregoing legal authority and our review of the certified record, we conclude that the trial court's order denying The Hartford intervention in this action was final and appealable as a collateral order. We further conclude that the trial court abused its discretion when it disallowed intervention by The Hartford, which was necessary to fully protect its subrogation rights and to challenge the apportionment of the settlement proceeds between Mr. and Mrs. Gleason for the loss of consortium claim.

Order reversed. Case remanded with instructions to allow the requested intervention. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/5/21

- 10 -