J-A17031-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JOHN GLEASON AND ELAINE GLEASON, H/W | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALFRED I. DUPONT HOSPITAL FOR CHILDREN, THE NEMOURS FOUNDATION, GENERAL ELECTRIC COMPANY, SODEXO CTM, INC., SODEXO, INC., AND Z AND F CONSULTING | : | No. 1757 EDA 2021 |
| | : | |
| | : | |
| | : | |
| APPEAL OF: THE HARTFORD INSURANCE GROUP | : | |

Appeal from the Order Entered January 30, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  160502115,
170503992

| | | |
|---|---|---|
| JOHN GLEASON AND ELAINE GLEASON, H/W | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HSC BUILDERS AND CONSTRUCTION MANAGERS AND PREFERRED ELECTRIC, INC. | : | No. 1758 EDA 2021 |
| | : | |
| | : | |
| APPEAL OF: THE HARTFORD INSURANCE GROUP | : | |

Appeal from the Order Entered January 30, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  160502115,
170503992

J-A17031-22

BEFORE:   PANELLA, P.J., NICHOLS, J., and COLINS, J.*

MEMORANDUM BY COLINS, J.:                    **FILED AUGUST 29, 2022**

The Hartford Insurance Group ("Insurer") appeals from the January 30, 2020 order of the trial court approving the petition for approval of settlement filed by Plaintiffs John and Elaine Gleason ("Plaintiffs" or "the Gleasons"). We affirm.

In our prior decision in this matter, this Court summarized the relevant history of this case as follows:

> Mr. Gleason was employed as an MRI Field Service Technician by Medical Imaging Group [("MIG")]. [Insurer] provides workers' compensation insurance to MIG. On May 29, 2015, while Mr. Gleason was performing maintenance on an MRI machine at Dupont Hospital, a fire and explosion occurred in the main distribution panel. Mr. Gleason's hair, skin and clothing caught fire and he suffered severe burns, scarring, disfigurement and temporary blindness. The Gleasons filed two actions against various defendants in 2016 and 2017, alleging negligence and loss of consortium. The defendants answered the complaints and filed cross-claims and the actions were consolidated in February 2018.
>
> The Gleasons reached a proposed settlement agreement with the defendants and they filed a petition seeking the trial court's approval of its terms on December 12, 2019. The agreement provided for a total settlement payment of $1.45 million dollars. That sum was allocated between the Gleasons, with $580,000 to Mr. Gleason and $870,000 to Mrs. Gleason for the loss of consortium claim. On December [24], 2019, all defendants joined in support of the Gleasons' petition without taking a position on the allocation between the spouses.

_____

* Retired Senior Judge assigned to the Superior Court.

- 2 -

*Gleason v. Alfred I. Dupont Hospital for Children*, 260 A.3d 256, 259 (Pa. Super. 2021).

Although Insurer was not then a party to the case, it filed a response to the petition for approval of settlement. Insurer argued that the allocation of 60% of the total settlement amount to the loss of consortium claim was not based upon sufficient evidence and would insulate a substantial portion of the settlement from Insurer's subrogation lien in light of the rule that a workers' compensation insurer has no subrogation interest in a spouse's recovery for loss of consortium. *See Thompson v. Workers' Compensation Appeal Board (USF&G Co.)*, 781 A.2d 1146, 1154-55 (Pa. 2001). After settling Mr. Gleason's workers' compensation claim, Insurer paid a total of $988,474 in workers' compensation benefits, including indemnity and medical benefits, as well as funding for a medical set-aside account for future medical expenses.

The trial court scheduled oral argument on the petition for January 23, 2020. Prior to argument, Plaintiffs sought leave to present testimony and submit documentary evidence. Insurer opposed the request, and at the hearing, the trial court only permitted the parties to submit exhibits—including Mrs. Gleason's deposition transcript, reports of Mr. Gleason's doctors, and records related to Mr. Gleason's workers' compensation benefits—and present oral argument.

The trial court entered its order approving the settlement on January 30, 2020. Insurer filed an appeal that was quashed because cross-claims among the defendants remained pending. On August 28, 2021, following

notation on the docket that all cross-claims had been resolved, Insurer filed the instant appeal challenging the approval of the apportionment of the settlement.[1]

Insurer presents two issues for our review:

1. Did the Trial Court procedure to address consortium allocation deny [Insurer] procedural rights necessary for a party whose substantive rights are being determined by the Court?

2. Was the Trial Court Judge's approval of 60% consortium apportionment to the spouse contrary to the weight of the evidence?

Insurer's Brief at 4 (reordered for ease of disposition).

We review a trial court's order approving or denying a settlement agreement for an abuse of discretion. *Dauphin Deposit Bank and Trust Co. v. Hess*, 727 A.2d 1076, 1080 (Pa. 1999). However, with respect to questions of law, our review is plenary. *Urmann v. Rockwood Casualty Insurance Co.*, 905 A.2d 513, 518 (Pa. Super. 2006). We are bound by the trial court's factual findings when supported by competent evidence. *Id.* "The evidence must be viewed in the light most favorable to the prevailing party." *Id.* "Thus, we will overturn the trial court's decision only when the court's factual findings are contrary to the weight of the evidence or when its legal conclusions are erroneous." *Id.*

---

[1] The trial court did not direct Insurer to file a concise statement of errors complained of on appeal, but instead, on March 4, 2021, issued a statement pursuant to Pa.R.A.P. 1925(a) in which it indicated that it was relying on the reasoning set forth in its June 3, 2021 opinion prepared in response to Insurer's earlier appeal.

"Subrogation has its roots in equity and was envisioned as a means to place the ultimate burden of a debt on the primarily responsible party." ***Arlet v. Workers' Compensation Appeal Board (Commonwealth of Pennsylvania)***, 270 A.3d 434, 441-42 (Pa. 2022).

> [W]hen an individual who has been indemnified for a loss subsequently recovers for the same loss from a third party, equity compels that the indemnifying party be restored that which he paid the injured party; thereby placing the cost of the injury upon the party causing the harm while preventing the injured party from profiting a "double recovery" at the indemnifying party's expense.

***Id.*** at 442 (citation omitted).

Subrogation in the workers' compensation context is governed by Section 319 of the Workers' Compensation Act ("Act"), which provides that the employer, or its insurance carrier, shall have subrogation rights related to a "compensable injury [] caused in whole or in part by the act or omission of a third party . . . to the extent of the compensation payable under [the Act] by the employer." 77 P.S. § 671. The employer is responsible for payment of "that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement." ***Id.*** Section 319 is recognized as establishing "an absolute right of subrogation" in the employer. ***Thompson***, 781 A.2d at 1151; ***see also Gleason***, 260 A.3d at 260 n.3.

Our Supreme Court has held that, "because a loss of consortium claim is derivative in nature and arises from the impact of the spouse's physical

injuries upon the marriage rather than from the injuries themselves, there is no identity or equatability of funds and, thus, an employer has no subrogation interest in a spouse's recovery for loss of consortium." **Thompson**, 781 A.2d at 1154-55 (citing **Darr Construction Co. v. Workmen's Compensation Appeal Board (Walker)**, 715 A.2d 1075 (Pa. 1998)). A loss of consortium claim, which is based upon "a loss of services, society, and conjugal affection of one's spouse" or "an injury to marital expectations," is "a separate and distinct cause of action . . . from a claim for bodily injury." **Darr**, 715 A.2d at 1080 (citation omitted). Because damages for loss of consortium have no market value, economic evidence is not required to support the award, and the amount awarded for such a claim is left to the sound judgment of the fact-finder. **Urmann**, 905 A.2d at 520.

In **Darr**, our Supreme Court "recognize[d] that a potential for abuse exists in the structuring of loss of consortium settlements between a claimant and a third party tortfeasor due to the lack of participation by the employer in the proceeding" because a "claimant would have the opportunity to shield his recovery from the employer's subrogation interest by fraudulently attributing an unwarranted amount of the damages to the spouse's claim for loss of consortium." 715 A.2d at 1081. The Court advised that "[i]n the event the settlement is unreasonably apportioned, an employer may always seek recourse in the court of common pleas." **Id.**

Insurer first argues that "the process and hearing" of the trial court to address Plaintiffs' petition to approve the settlement was "an abbreviated

process" that "was insufficient to protect [Insurer's] rights" as subrogee to Mr. Gleason's claim against the defendants in this action. Insurer's Brief at 17. Insurer contends that the "parties to a *Darr* hearing should be afforded the same procedural rights as any other party whose substantive rights are being determined by the [trial c]ourt including rights to discovery, presentation of witnesses and other evidence, trial if necessary, and an impartial finder of fact on the important factual issue of apportionment of damages." Insurer's Brief at 16-17.

Insurer finds support for its argument that its due process rights were violated in our decision in its earlier appeal in this matter, in which we held that denial of intervention prevented Insurer from fully protecting its subrogation rights and challenging the settlement. *See Gleason*, 260 A.3d at 262-63. Insurer also objects to the fact that the trial court relied on a January 14, 2020 report prepared by Mr. Gleason's psychiatrist, Arlene P. Bennett, M.D., which was produced after discovery concluded and following settlement with defendants and Plaintiffs' petition to approve the settlement was filed.

Insurer is entitled to no relief on its claim that its due process rights were violated. First, we note that, while this Court previously ruled in Insurer's favor in reversing the trial court's denial of Insurer's motion to intervene, Insurer did not file its motion until almost three months **after** the trial court had already entered its order approving the settlement. *See id.* at 260, 262-

63.[2]   Therefore, Insurer was not denied the opportunity to participate as a party in the proceedings at issue here as it had not yet sought to intervene when the settlement was approved.

Furthermore, our review of the record reveals that Insurer did not at any point lodge any objections in the trial court concerning the manner in which the court conducted the hearing.  "As a general matter, it is axiomatic that issues not raised in lower courts are waived for purposes of appellate review, and they cannot be raised for the first time on appeal."  *Trigg v. Children's Hospital of Pittsburgh of UPMC*, 229 A.3d 260, 269 (Pa. 2020); *see also* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").  "Requiring issues to be properly raised first in the trial court ensures that trial judges have the opportunity to consider a potential appellate issue and correct any error at the first available opportunity."  *Trigg*, 229 A.3d at 269.  Because Insurer did not raise any purported procedural irregularities prior to or during the hearing at issue in this appeal, we are constrained to find that Insurer's due process

_____

[2] Insurer filed its motion to intervene on April 20, 2020 after it had already filed a notice of appeal of the trial court's January 30, 2020 order approving the settlement.  The trial court denied intervention on May 14, 2020.  After this Court entered an order quashing Insurer's initial appeal of the order approving the settlement apportionment as interlocutory, Appellant filed a second motion to intervene, which the trial court denied on August 21, 2020. Appellant appealed from this order and we held in our earlier opinion that the appeal was permissible under the collateral order doctrine and that the trial court had abused its discretion by denying intervention.  *Gleason*, 260 A.3d at 261-63.

argument is waived. ***Id.***; ***see also In Interest of A.W.***, 187 A.3d 247, 252-53 (Pa. Super. 2018) (argument that trial court did not protect party's due process rights at hearing was waived because no timely and specific objection was made).

Even to the extent we would reach the issue, we would find that Insurer was not prejudiced by any procedural error in this case. Although Insurer was not a party to the case at the time the petition to approve the settlement was filed, it was given notice of the petition, an opportunity to object, and a full and fair opportunity to submit evidence and argue to the trial court why the apportionment to Mrs. Gleason's loss of consortium claim was improper. While Appellant contends that it was denied discovery and the ability to present witnesses, the record reveals that Insurer did not seek leave of the court to conduct discovery and further that it was Insurer which **opposed** Plaintiffs' request to present live testimony; the trial court sided with Insurer and restricted the parties to only presenting documentary evidence at the hearing. N.T., 1/23/20, at 5. In addition, ***Darr*** is unavailing to Insurer because, as the trial court notes, our Supreme Court's decision simply provides that a workers' compensation employer or insurer shall have recourse in the court of common pleas to challenge the allocation of a settlement to a consortium claim and does not set forth a specific procedure that must be followed to resolve such a dispute. Trial Court Opinion ("TCO"), 6/3/21, at 6; ***Darr***, 715 A.2d at 1081. Lastly, the trial court invited Insurer to engage in negotiations with Plaintiffs and defendants regarding the settlement apportionment prior to the hearing,

yet Insurer expressly declined to even participate in discussions until the amount of consortium was determined by the court. *See* N.T., 1/23/20, at 3-4.

Insurer next argues that the apportionment of 60%, or $870,000, of the $1.45 million dollars towards Mrs. Gleason's loss of consortium claim was against the weight of the evidence. Insurer notes the evidence that was presented at the settlement approval hearing regarding Mr. Gleason's injuries, showing that he sustained burns to his face, hands, and arm; his receipt of extensive medical treatment, including 11 days in the burn unit and two surgeries; and his resultant psychological issues, including nightmares, flashbacks, depression, and PTSD. In addition, Insurer highlights the evidence of Mr. Gleason's economic damages, consisting of greater than $850,000 in diminished lifetime earning capacity.

Insurer contends that, by contrast, Mrs. Gleason's damages were much less severe, consisting of little more than working more hours, assuming more household responsibilities, and assisting Mr. Gleason with wound care for a few months after the accident. In effect, Insurer asserts that the 60% apportionment to the consortium claim was little more than "a ploy to shield recovery from [Insurer's] workers compensation subrogation lien" to which it was statutorily entitled. Insurer's Brief at 11.

In its opinion, the trial court provided a thorough account of the evidence presented by the parties at the hearing on the petition to approve the settlement. The court addressed the evidence submitted by Insurer,

- 10 -

including a vocational report showing that Mr. Gleason had suffered a loss of earning potential of over $30,000 annually from his $70,000 to $75,000 salary prior to his injury. TCO at 9; Ex. D-2, Report of Irene Mendelsohn, M.S., C.R.C., 2/7/19. In addition, the trial court noted that an economist had estimated Mr. Gleason's lifetime loss in earning capacity in the range of $854,551 and $893,338. TCO at 9; Ex. D-3, Report of Andrew Verzilli, M.B.A., 5/5/19.

The trial court also reviewed Mrs. Gleason's deposition testimony that, following her husband's accident, she was forced to switch from part-time work as a school aide to full-time work and she also picked up additional summer hours to compensate for lost income. TCO at 7-8; Ex. P-1, Mrs. Gleason Deposition Transcript, 5/22/18, at 12-13, 28, 57-58. As the court explained, Mrs. Gleason testified that the accident resulted in changes to the couple's relationship as she had to deal with her husband's increased irritability and anger and a loss of intimacy. TCO at 8; Ex. P-1 at 37, 39-40. Mrs. Gleason stated that she "was in denial that [the accident] totally changed [her] life" as a result of Mr. Gleason's personality changes and she was forced to "walk[] on eggshells around" her husband. TCO at 8; Ex. P-1 at 43-44. The trial court further related that Mr. Gleason's injury had led to frequent fights between the couple regarding family finances; their teenage daughter had experienced stress-related "stomach issues" because "[s]he doesn't want to see [her parents] fight." TCO at 8; Ex. P-1 at 40, 54-55, 69.

The trial court further recounted that Mr. Gleason had made an excellent recovery from his injury by 2019, with his neurosurgeon reporting that his chronic pain was well-controlled and he no longer was in need of pain medications and Dr. Bennett, Mr. Gleason's psychiatrist, stating that he was responding well to therapy and had reconnected with friends, church, and coaching youth sports. TCO at 10; Ex. P-2, Clinical Update of Dr. Bennett, 6/8/19, at 2; Ex. P-3, Progress Notes of Gaurav Jain, M.D., 3/20/19, at 1, 3. However, the trial court noted that Dr. Bennett had also observed stresses in the couple's marriage, including a complete loss of intimacy, regular disputes regarding finances, a lack of any social life together, and the absence of any shared relationship with their church, even though they were individually observant. TCO at 8-9; Ex. P-2, Clinical Update of Dr. Bennett, 1/14/20, at 1-2. Dr. Bennett concluded that:

> The Gleasons are coming to grips with how their relationship has deteriorated since [Mr. Gleason's] accident. He described them as being like strangers moving around in the same house. Following one of their attempts to communicate, I was surprised to get an e-mail from his wife explaining how much their relationship had changed after [Mr. Gleason's] injury and how awful she was still feeling. I have offered to find a reputable counselor near their home . . . and I hope that she will pursue counseling.

TCO at 9; Ex. P-2, Clinical Update of Dr. Bennett, 1/14/20, at 2.

The trial court found that the exhibits submitted by Plaintiffs demonstrated Mr. Gleason's substantial recovery from his physical and mental injuries, while Mrs. Gleason's "emotional and mental health [had]

deteriorated" as she attempted to cope "with the sudden and prolonged loss of her husband's companionship and disruption to her family life." TCO at 10. The trial court noted that nothing in the evidence submitted by Insurer contradicted the account of Mrs. Gleason's harm. *Id.* The court thus concluded that "considering both the lingering psychic harm to M[r]s. Gleason and Mr. Gleason's positive recovery, the evidence amply supports [the] conclusion that the allocation of 60% of the total settlement to the loss of consortium claim in this third-party action is reasonable." *Id.* The trial court further determined that there was no support for Insurer's claim that the allocation was "an attempt to thwart its subrogation rights" as there was no evidence offered "from which it can be inferred that the Gleasons entered the settlement with a bad motive." *Id.* at 10-11.

Upon our review of the record, we discern no abuse of discretion in the trial court's approval of the apportionment of the settlement between Mr. Gleason's negligence claim and Mrs. Gleason's loss of consortium claim. The evidence before the trial court showed that Mrs. Gleason suffered significant emotional injuries and her quality of life and marriage had markedly declined after her husband's injury. Insurer's evidence did not in any way rebut the findings of the harm to Mrs. Gleason. Moreover, Insurer offered no evidence to show that the apportionment of the settlement constituted a "ploy" to evade the subrogation lien. As we find that Insurer has not shown that the trial court's grant of Plaintiffs' petition to approve the settlement was against the

weight of the evidence set forth at the hearing below, we affirm the trial court's January 30, 2021 order.

Order affirmed.

Judgment Entered.

*Joseph D. Seletyn*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/29/2022